Powell v. Powell.

---

## MARGARET POWELL V. JAMES L. POWELL.

1. DIVORCE; *Insanity, After Marriage.* Insanity, occurring after marriage, is not cause for divorce; and nothing which is a consequence of it can be. Neither is impotency caused by such insanity, nor extreme cruelty, while so insane, ground for divorce.

2. —————— *Impotency.* The provision of the statute, that the district court may grant a divorce for impotency, is to be construed, that the impotence must have existed at the time of the marriage.

3. —————— *Insanity at Time of Marriage.* A marriage with an insane person, is absolutely void for want of sufficient mental capacity on the part of such insane person to consent to the marriage.

4. —————— *Sentence of Nullity.* If a marriage is void by reason of the insanity of either of the contracting parties, while no judgment annulling such marriage as void *ab initio* is necessary to restore the parties to their original rights, yet a sentence of nullity in such a case is conducive to good order and decorum, and to the peace and conscience of the party seeking it.

5. —————— *Relief, where Party is Incapable to Contract Marriage; Jurisdiction of Court.* Section 648 of the civil code makes provision only for incapables to bring action to have a marriage to which such person is a party, declared void; but independent of this statute, and the sections of the law relating to divorce, the district court, on the application of either party to such a marriage, has jurisdiction to hear the cause, investigate the charge, and to afford the requisite relief.

*Error from Neosho District Court.*

ACTION for divorce, commenced in October 1874. Defendant was then in the asylum for the insane. Service, copy of summons left with one T. F. T., guardian of defendant. Trial, as upon defendant's default, at January Term 1875, T. W. C., judge *pro tem.*, presiding, and decree of divorce entered. At the December Term 1875, the district court, P. B. presiding, the decree was vacated and set aside. From this order vacating said decree, the plaintiff appeals. The allegations of the petition, and the facts, will appear in the opinion, *infra.*

*Hutchings & Denison,* for plaintiff:

The writers of this brief first became connected with this case after the filing of the motion to vacate the judgment, and hence are not responsible for the pleadings. Both the petition and amended petition are, perhaps, subject to severe criticism, for indefiniteness, uncertainty, and surplusage; but as neither these infirmities of the petitions, nor mere errors in the proceedings, are sufficient to justify the court in holding a judgment void, (Freeman on Judgts., §§ 101–135,) and as the plaintiff acted under the advice of counsel, and in the utmost good faith, and as the sweeping away of the decree for divorce and alimony, upon the mere suggestion of the insufficiency of the petition, has left her in a most embarrassing position, we deem ourselves justified, and in duty required, to present the case to this court.

The only grounds of the motion to vacate the judgment were, first, that the petition did not state facts sufficient to constitute a cause of action; second, that the court had no jurisdiction of the person or subject-matter. Upon the hearing no evidence of any kind was produced, and the court sustained the motion solely upon the ground of the insufficiency of the petition. We contend that the court got jurisdiction of the person by the service of the summons and appearance of the guardian. (Gen. Stat. 554, § 18; p. 557, § 36.) That an insane person may sue and be sued in all or-

dinary actions, the same as a person not under disability, and for that purpose may appear by his committee or guardian, and be bound by judgments rendered, seems to be settled by all the authorities. (Freeman on Judgts., § 152; 28 Wend. 85; 1 Hill, 97; 14 Barb. 488; 8 Barb. 552; 2 Bishop Mar. & Div., § 308.) The action proceeds against, and the judgment is properly rendered against the lunatic, as in this case, and not against his guardian. (21 Ala. 797.) We cannot find that any discrimination is made against actions for divorce, or that in reason and public policy any such discrimination should be made. (6 How. Pr. 194; 13 Mass. 412; 7 Mass. 474.) This being settled, does the petition or amended petition state a cause of action? The pleadings on this motion will be judged by no stricter rules than those applicable upon a general demurrer to the same pleadings. We claim for the amended petition, that it sufficiently states a cause of action for extreme cruelty, (sub. 6, § 639, civil code,) and nothing more. The allegations concerning impotency should be treated as surplusage. But it will be claimed that, inasmuch as the petition alleges that defendant was insane before the marriage, and has continued to be so, that this must be construed to mean total, absolute, and habitual insanity; and that extreme cruelty cannot be predicated of an act done by a person in a state of insanity. We are not called upon to dispute this latter proposition, but we deny that any such construction is to be given to the petition. It is perhaps true, that the appointment of a guardian is conclusive proof of incapacity, and no subsequent act of the lunatic can form the basis of an action, civil or criminal; but the act of extreme cruelty in this case was committed on the 1st day of June 1872, and the defendant was not taken into any kind of custody until the 11th of said month. A person may be sane upon one subject, and at the same time insane upon another, and in such cases would be liable, civilly or criminally, for his acts not influenced by his infirmity. "A lunatic is indeed properly one that hath lucid intervals; sometimes enjoying his senses, sometimes not." Now in this case, according to

the allegations of the petitions, while the defendant was insane at the time and before the marriage, yet the plaintiff did not know it until a long time afterward, and it would be a very narrow and ungenerous construction of these allegations, to say that they exclude the idea of lucid intervals, and that under them proof could not be introduced to show that the defendant was sane and responsible for his acts on the 1st day of June. Of course, if such proof could have been introduced, the court will presume that it was, and that the decree was entered on sufficient evidence. But, we go further: If the same rules applicable on the hearing of general demurrers govern this case, then the allegation that the defendant was guilty of extreme cruelty, though perhaps the allegation of a conclusion of fact, is sufficient, (12 Kas. 124,) and is equivalent to alleging that the defendant committed the acts under such circumstances, and in such a state of mind, as to constitute extreme cruelty, and excludes the idea, that the defendant was influenced by insane impulses when he committed the acts. If the petition alleged in terms that the defendant on the first day of June, and at the time of committing the acts constituting extreme cruelty, was in a lucid interval, there would be no doubt of the sufficiency of the petition; and we think the petition does clearly, by implication, say this, and any other construction is forced and unreasonable. But, if this rigid construction is to prevail, then upon the same construction we insist, the defendant being insane before, at the time, and ever since the marriage, as alleged in both petitions, and the presumption and possibility of lucid intervals being excluded, the defendant must be held to have been incapable of contracting the marriage, or ratifying it afterward. If the defendant was *non compos mentis*, the contract could not have been mutual, there was no contract, and the marriage was void. 1 Pars. Contr. 310; 1 Foster, 52; 12 Mass. 363; 1 Bishop Mar. & Div., § 124. Insanity occurring after the marriage, is not, and ought not to be ground for divorce; and our divorce statute does not in terms provide for declaring marriages entered into by persons *non compos*

*mentis,* void.   Yet such contracts, like all other contracts en-
tered into by persons not possessed of a consenting mind, are
void, and courts of equity will pronounce decrees of nullity,
independent of the statute; and we submit that actions for
this purpose are not technically actions for divorce, ( 2 Ire.
Eq. 470; 3 id. 91, 192,) and courts having full equity powers
are not limited or restricted by the divorce statutes, but under
their ordinary powers will interfere and pronounce sentences
of nullity against contracts of marriage which are in law void
*ab initio.*   But the position of defendant's counsel is, that the
court should construe the petition to mean that the defendant
has been totally insane since before the time of the marriage,
and consequently that no act or omission of his during this
interval can furnish the ground for divorce.   That while the
court should adopt this construction of the petition, it should
also hold that the defendant at the time of the marriage had
a consenting mind and was capable of contracting, and that
he may discard his guardian and appear by counsel to resist
any action to have the marriage annulled — indeed that the
divorce statute is a restriction upon the power of the court to
pronounce a sentence of nullity on any ground except the
*causes for divorce* therein specified, and the single exception
provided for in § 648 of the code.   If this contention shall
prevail, then there is *no* relief for the plaintiff, nor is there
any means of procuring a judicial declaration of nullity in
any case where the marriage is void in law for reasons exist-
ing at its inception, as in cases of marriage within the pro-
hibited degrees of consanguinity, etc.

*John C. Carpenter,* for defendant:

   Counsel for plaintiff has truly said, " the petition and
amended petition in this case are perhaps subject to severe
criticism, for indefiniteness, uncertainty, and surplusage."   It
is doubtful if by strict search through the files of the various
courts of this state a judgment was ever before rendered in
favor of a party upon a document, called " petition," that
would begin to compare in worthlessness with the one in this

Powell v. Powell.

case. Counsel also state that the district court "sustained the motion to vacate the judgment solely upon the ground of the insufficiency of the petition." This is also correct. The district court in effect declared the petition insufficient, and hence a nullity. The plaintiff bases her claim for relief upon the grounds, 1st, insanity; 2d, cruelty; 3d, impotency. Section 639 of the code gives the causes upon which a divorce may be granted. Insanity, whether existing at the time of the marriage, or accruing subsequent thereto, are not in terms by the code made grounds for a divorce. The marriage relation or contract can only be dissolved on some one of the grounds named in the statute, and insanity is not one of these. But plaintiff's counsel think the allegation of "extreme cruelty," is good on general principles. The "extreme cruelty" upon which plaintiff relies occurred a few days only before defendant was taken to the insane asylum, while the defendant was insane and mentally incapable of knowing what he did. It is the accepted doctrine, that adultery committed while the party is insane, is not a ground of divorce; (Bishop on Marriage and Divorce, § 612.) If this be true, why should consequences flow from acts of cruelty, which do not from the adultery of the party? There is a clear and well-defined distinction between cruelty committed while sane, and while insane. The former has the consent of the mind, the party knows the consequences, and accepts the possibility and contingency of the act. In the latter case, these are wanting. There is no evidence or allegation that the "lucid interval" was upon the mind of this unfortunate defendant at the time the "extreme cruelty" is alleged to have been committed. But on the contrary, plaintiff's petition says "the defendant was, at the time of their marriage, and has continued to be, and still remains insane, and that his insanity has continually grown worse." Hence the two or three pages of plaintiff's brief about "lucid intervals," are simply outside the case. "Insanity of the wife, is not cause for divorce, although such insanity may be permanent. Neither is impotency, caused by such insanity; nor cruel and inhuman treatment, while so

insane, any ground for divorce." *Wertz v. Wertz*, supreme court of Iowa, June term 1876, reported in 10 Western Jurist, 468.

The opinion of the court was delivered by

HORTON, C. J.: An action was commenced in January 1875, in the district court of Neosho county, by Margaret Powell to obtain a divorce from James L. Powell. The causes alleged in the petition were the impotency of the defendant, and extreme cruelty on his part toward the plaintiff. The petition also stated that the defendant was at the time of the marriage, and at the time that the plaintiff contracted to marry the defendant, afflicted with insanity, which then and long after the marriage was wholly unknown to the plaintiff; that the defendant had continued insane from the time of the marriage to the commencement of the action, and that his insanity had continually grown worse; that on or about June 11th 1872, he was committed to the insane asylum at Osawatomie, and had since that time been confined in the asylum. Service of the summons was made on the guardian of the defendant in pursuance of sec. 36 of ch. 60, Gen. Stat. 557. No answer was filed, and on proof offered, the court entered a decree of divorce releasing the parties from the obligations of the marriage, giving the custody of the children born in wedlock to the plaintiff, and adjudging that the plaintiff should have, enjoy, and possess as alimony, certain real estate with the right to sell the same at her pleasure. Eleven months afterward, a motion was made by James L. Powell, by his counsel John C. Carpenter, Esq., to vacate and set aside the judgment, as wholly void, because the petition did not state facts sufficient to constitute a cause of action. On 29th December 1875, the court sustained the motion, and ordered an entry to be made that the judgment should be set aside as void, and held for naught. To this action of the court the plaintiff excepted, and asks that it be reversed.

Under the allegations in the petition, we must assume that

25—18 KAS.

the defendant was insane at the time of the alleged acts of cruelty, and, as a sequence, was mentally incapable of knowing what he did. Under such circumstances, on very familiar principles, he could not be held responsible for his acts, and we do not think the acts thus committed a sufficient cause of divorce. As insanity itself, after marriage, is no cause for a divorce, nothing which is a consequence of it can be. The counsel for plaintiff do not dispute this conclusion, but insist that the petition should be so construed that the defendant had lucid intervals, and that thereupon, proof was introduced that the defendant was sane at the commission of the acts complained of. Unfortunately for this theory, there is no room for this construction. The allegations in the petition are broad and sweeping. It is asserted "that the defendant was at the time of the marriage, and has continued to be and still remains insane, and that his insanity has continually grown worse." The extreme cruelty alleged, occurred June 1st 1872, and ten days afterward the defendant was taken to the insane asylum. If the defendant had lucid intervals, and committed any act for which he was responsible during such times, upon which a decree of divorce could be based, the petition should have so stated. In the absence of any such allegations, we cannot presume, against the averment to the contrary, that the defendant was sane at the commission of the alleged acts of cruelty. The petition excludes the idea.

Counsel for plaintiff admit that the statements concerning impotency set forth in the petition are insufficient, and should be treated as surplusage; hence, we need only say, as to that alleged cause for divorce, that our statute in that regard is to be interpreted in harmony with the common law; and when the legislature enacted that a divorce might be granted for impotency, it was intended that the impotence must have existed at the time of the marriage. If a person should become impotent *after* marriage, the marriage is good, and no ground of divorce exists therefor. Such is the universal doctrine.

2. Impotency.

The only serious question in this case is, the effect of the averments of the insanity of the defendant at the time plaintiff contracted to marry him, his insanity at the date of such marriage, and the continuance of such insanity. The marriage of an insane person is absolutely void, by reason of the want of capacity of such a party to contract; and in this case, if the allegations in the petition are true, the marriage of the plaintiff and defendant was null and void, and has never since obtained any validity, because the defendant has never been in any mental condition to ratify or consummate it. Not only was there no marriage *de jure,* but it would also be a misnomer to call it a marriage *de facto,* although law-writers thus frequently designate it. It was a nullity, and the plaintiff is in no way bound to defendant by any marriage relation. The concurring assent of the two minds was wanting. The plaintiff is as free from the defendant as if the court below had pronounced a decree of nullity, as no judgment was necessary to restore the parties to their original rights. The fitness and propriety of a judicial decision pronouncing the nullity of such a marriage, is supported, because conducive to good order and decorum, and to the peace and conscience of the party seeking it. *Weightman v. Weightman,* 4 Johns. Ch. 343; *Rawdon v. Rawdon,* 28 Ala. 565. Another reason why a judicial determination of such a marriage ought to be sanctioned, is, that an opportunity should be given, when the evidence is obtainable and the parties living, to have the proof of such marriage being void preserved in the form of a judicial record, so that it cannot be disputed or denied. But in the case at bar, the cause was prosecuted, tried, and decided, as a "divorce suit" under the provisions of the code. This is more apparent when we fully examine the record. Permission was obtained to amend the petition, and two statutory causes for which divorces are granted, were inserted; the maiden name of the plaintiff was omitted; the petition was verified; the children's names were set forth, with the

*The marginal notes read: "3. Insanity at time of marriage." and "4. Sentence of nullity."*

surname of the defendant; the real estate of the defendant was specifically described, and in the prayer for relief the court was asked to grant a divorce, to divide the real estate, to give $3,000 as alimony, and to award the custody of the children to plaintiff. The court in rendering judgment granted all the relief prayed for, but instead of dividing the real estate, decreed all of it as alimony to the plaintiff, who has assumed and retained the name of the defendant. Under the particular circumstances of this case, we cannot construe the action as one prosecuted to have the void marriage pronounced a nullity, and that therefore the action of the court below, in vacating and setting aside the judgment for being void, was not erroneous.

It is immaterial whether the defendant, or his attorney, had the right to appear and make such motion or not. If the judgment was void, no injury resulted to the plaintiff from the order of the court; and holding the judgment void, we cannot interfere with the action of the district court. If the judgment in this case could be construed as a decree annulling a void marriage, so much of the judgment as awards alimony to the plaintiff would be nugatory. We view the case as the court below considered it, and treat it as that court treated it, simply as an action for divorce and alimony, under the provisions of the code. Any other construction by us would be grossly unjust to all the parties to the proceeding, and especially so to the plaintiff. It is doubtful whether the plaintiff would be willing to accept the original judgment attempted to be rendered, if she was fully acquainted with the consequences which would result if we were to hold the judgment valid so far as determining the marriage void *ab initio* by reason of the insanity of the defendant. A sentence of nullity like this would strip her of all alimony, deprive her of all interest in the property of defendant, and bastardize her children. We make these last remarks more freely, because the counsel for the plaintiff in this court state in

*Status of parties, when marriage is void ab initio.*

their brief "that they first became connected with the case after the filing of the motion to vacate the judgment, and hence are not responsible for the pleadings."

If upon full consideration, the plaintiff still wishes to end the mesalliance between herself and the defendant by a sentence of nullity declaring void the marriage for want of 5. Relief; juris-  sufficient mental capacity of the defendant, with diction of court.  consent of the court below she can amend her petition, and prosecute the suit to final judgment, or she may disregard the proceedings had and commence *de novo*. Sec. 648 of the code (Gen. Stat. p. 759,) does not in any manner restrict the plaintiff from prosecuting or instituting her action to annul a void marriage. Said section applies only to incapables, who are unable to contract marriage from want of age, or understanding. Independently of the provisions relating to divorce, the district court has full jurisdiction to afford the plaintiff requisite relief. If she wishes no judicial determination of the question, and the defendant was insane at the time of the marriage, and has had no lucid intervals since, she may treat such marriage as wholly void. So it is not correct, as the counsel for plaintiff suggest in their brief, that if this judgment is not upheld the unfortunate plaintiff has no relief.

The order of the district court in vacating the said judgment will be affirmed.

All the Justices concurring.