No. 45,400

Evelyn Dodd, *Appellee,* v. David O. Dodd, *Appellant.*

(499 P. 2d 518)

Opinion filed July 19, 1972.

*Lloyd Burke Bronston,* of Bronston and Smith, of Kansas City, argued the cause and was on the brief for the appellant.

*William E. Scott,* of Scott, Daily and Vasos, of Kansas City, argued the cause, and *Donald W. Vasos,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: The question here is whether an award of alimony in a divorce decree, based upon an agreement of the parties and ordering alimony payments to the wife until her remarriage or death, is terminated by the wife's remarriage when such marriage is voidable and is subsequently annulled.

The contesting parties were married September 6, 1960, and at all material times since have resided in Johnson county, Kansas.

On November 22, 1967, they were divorced in the district court of Wyandotte county, Kansas. In the divorce proceedings they entered into a written property settlement agreement. This instrument provided for the division in kind of certain items of property. It also provided that the plaintiff Evelyn should have custody of the parties' minor daughter for whose support the defendant David agreed to pay $100 per month until further order of court, plus her unusual or extraordinary medical or dental expenses.

The agreement contained this provision for alimony:

"3. The defendant will pay over to the plaintiff the amount of $300.00 per month as alimony until and unless such time as the death or remarriage of plaintiff nullifies this agreement, said payments to commence on December 1, 1967, and further payments shall be payable on or about the first day of each month thereafter until the death or remarriage of the plaintiff. . . .,"

and it concluded with this language:

"The parties hereto each intend and understand that this agreement is intended to constitute a full, final and complete settlement of all property rights and all obligations for support and maintenance by and between the parties hereto. Plaintiff, in particular, understands that by virtue of the agreement hereinabove set out she may not look to the defendant for financial assistance in the way of alimony or property in any manner inconsistent with the terms or in violation of this agreement."

In granting the divorce the trial court found that the agreement was fair and equitable, approved the agreement and ordered it merged into the divorce decree by reference.

The next event revealed by the record on appeal is the marriage in Kansas City, Missouri, of Evelyn to one Skelton on August 13, 1969, pursuant to a marriage license issued in Cass county, Missouri. This union was short-lived. Evelyn engaged legal counsel other than the one who had represented her in the Wyandotte county divorce, betook herself to Leavenworth county, Kansas, where on October 23, 1969, she obtained an annulment on the ground Skelton had fraudulently induced her to enter into the marriage contract. The annulment decree reveals Skelton waived service of summons in that action, entered his appearance therein and consented to immediate trial. The decree further evidences Evelyn received judgment of $2,400 against Skelton to compensate her for her interest in a 1969 Continental Mark III awarded her erstwhile spouse.

Evelyn did not inform David of her matrimonial venture, nor of its subsequent invalidation, and dutifully he continued his $300

alimony payments to her—which she accepted. David's first knowledge of the affair came from an unsigned letter received by him in October, 1970. When his investigation confirmed the anonymous allegations, he filed in the trial court on November 13, 1970, his motion reciting the concealed remarriage and its subsequent annulment; he asked that his obligation to pay alimony be terminated retroactively to the date of such remarriage and that he have a judgment of $3,900 by way of restitution for the overpayments accepted by Evelyn.

Evelyn responded by filing her answer to this motion in which she admitted her participation in the Skelton marriage ceremony and that she lived with Skelton for a few days. She asserted that the annulment because of fraud rendered her purported marriage to Skelton void *ab initio* and therefore the marriage had no effect upon her continuous right to alimony. In the alternative, in the event her alimony should be discontinued, she asked for an increase in the amount of David's child support payments.

Treating the issue as a matter of law and without hearing evidence, the trial court on November 25, 1970, denied David's motion. Thereafter the court permitted a rehearing at which it received testimony offered by the parties. For present purposes we need not relate this evidence except to note it disclosed that Evelyn's marriage to Skelton was in fact consummated. At the conclusion of the rehearing the trial court adhered to its initial order denying David any relief and he has now appealed.

This court has not previously dealt with the precise question at issue.

The trial court arrived at its decision by reason of certain language found in *Johnson County National Bank & Trust Co. v. Bach*, 189 Kan. 291, 369 P. 2d 231, and appellee urges affirmance upon that basis. In *Johnson* a wife who was granted a divorce accepted the provisions of an irrevocable trust in lieu of alimony. The divorced spouses were the settlors in the trust agreement which provided for periodic payments to the wife of the net income derived from the trust estate until her death or remarriage. In event of her remarriage she was to receive only three-fifths of the income, the remaining two-fifths to go to the parties' children, who were also named as remaindermen of the trust estate. During existence of the trust the trustee was authorized to invade the corpus to provide comfortable maintenance of the beneficiaries. The wife later

was a party to a marriage ceremony in Wyoming, of which event she promptly notified the trustee. Subsequently she learned her intended spouse had a wife from whom he had never been divorced and as a result she obtained an annulment upon the ground of his incapacity to contract a valid marriage. The trustee declined thereafter to pay her the full amount of the trust income and filed a declaratory judgment action for directions. The trial court held that notwithstanding its annulment the purported marriage constituted a remarriage under the terms of the trust agreement.

In reversing the judgment this court emphasized that the wife had made a substantial contribution of her own property to the trust estate. Respecting a void marriage this was said:

"Under Kansas law a marriage where one of the parties at the time has a husband or wife living is *void, absolutely and in all aspects.* It requires no judgment of divorce or of nullity to render it void. It is void inherently and from the beginning. The innocent party may, however, maintain an action in equity to have such colorable marriage declared null and void. . . . In *Powell v. Powell* 18 Kan. 371, the court, speaking of a void marriage for want of mental capacity on the part of one of the parties, said: 'Not only was there no marriage *de jure,* but it would also be a misnomer to call it a marriage *de facto,* although law-writers thus frequently designate it.' (p. 379.) . . .

"A void marriage may be treated as void by the parties to it and by all the world. It is good for no legal purpose, and is not attended or followed by any of the incidents of a valid marriage. A decree or adjudication of annulment for a void marriage is supported because conducive to good order and decorum, and to the peace and conscience of the party seeking it. . . . An annulment has the effect of declaring the marriage relation void *ab initio.*" (pp. 295-296.)

The court went on to state:

"The primary purpose of the trust, as we construe the trust instrument, was to provide for the support and welfare of the immediate beneficiary, Mrs. Bach, with a gift over to the children in the event of her death. To fulfill this primary purpose the trustee is authorized to invade the corpus of the trust estate, even though the result might be detrimental to subsequent beneficiaries. If there was to be an alteration in the primary purpose by making a reduction in the income payments to Mrs. Bach in the event of her remarriage, it was the intention of the parties to substitute another source of income for her support in its stead. This could be accomplished only by a *valid* marriage, one which gives rise to marriage status. The event or contingency of *remarriage,* therefore, within the contemplation of the parties to the trust agreement required the creation of a *valid marriage status.* This, in our opinion, was the intention of the parties expressed therein." (p. 298.)

We think it clear that *Johnson* does not for several reasons argue strongly, if at all, for the conclusion appellee would have us reach

here. There the marriage was bigamous and absolutely void even in the absence of a decree so declaring it; such a marriage is incapable of ratification regardless of the wishes of the participants. Here it was merely voidable, being induced by fraud where one of the parties had an option to continue the marriage and make it valid despite the fraud, or set it aside. In *Johnson* the wife had contributed substantially of her own property to the trust corpus from which she was to receive payments until her remarriage. Here, it is readily apparent from the property settlement agreement the alimony paymnts were not, either partially or wholly, in lieu of an award of property owned or acquired by the parties during their marriage, and appellee advances no contention to the contrary. In *Johnson,* from the terms of the agreement itself, this court could ascertain the parties' intention to provide thereby a source of support for the wife and, more importantly, the further intent, if that arrangement were altered, to substitute in its stead another source of income for support which could be accomplished only through a valid marriage status. No such intention is evident from the agreement in the case at bar. If anything, it speaks to the contrary.

Courts in other jurisdictions have employed different rationales in considering the effect upon alimony of an annulled remarriage. Varying results have been reached where the remarriage is void but there is now virtual unanimity where it is merely voidable. In the latter case the rule which has been applied is that a husband's obligation to pay his divorced wife alimony until her remarriage terminates upon that event and is not revived by the subsequent annulment (see ALR 2d Later Case Service to anno. at 48 ALR 2d 318, 329; Tucker, "Effect Of An Invalid Remarriage On Alimony Payments"; XXIV Wash. & Lee L. Rev., 326). In many of the decided cases public policy has been the deciding factor (see, e. g., *Flaxman v. Flaxman,* 57 N. J. 458, 273 A. 2d 567). Intriguing as this aspect of the situation may be, we need not explore it in the case at bar even though we might be led to the same result.

K. S. A. 1971 Supp. 60-1610 (*d*) provides that payment of alimony settled by agreement, found by the trial court to be valid, just and equitable and incorporated in the divorce decree, is not subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent.

Here the divorce decree approved and incorporated the parties'

written separation agreement as to alimony. In *Drummond v. Drummond*, 209 Kan. 86, 495 P. 2d 994, we had this to say respecting such agreements:

"The intent of the parties to a separation agreement is determined by the agreement when its terms are plain and unambiguous, and when the language is clear and unequivocal the meaning must be gleaned from its contents alone and words cannot be read into an agreement which import an intent wholly unexpressed when the agreement was executed." (Syl. ¶ 4.)

As already indicated, we have no difficulty in concluding that the agreed provisions for alimony are clear and unambiguous, leaving no room for outside matters to be used to change their meaning or to construe them. The agreement called for alimony payments "until and unless such time as the death or remarriage of plaintiff nullifies this agreement", such payments to commence on a prescribed date and to continue "until the death or remarriage of the plaintiff"; further it specifically cautioned appellee she could not look to appellant for financial assistance in the way of alimony or property in any manner inconsistent with the terms or in violation of the agreement.

The agreement says nothing about the status of the remarriage and termination of the alimony is not made to turn on its validity. Nothing in the agreement evinces an intent to provide, as was the case in *Johnson County National Bank & Trust Co. v. Bach*, supra, that if the arrangement therein provided was altered, to substitute in its stead another source of income for support which could be accomplished only through a valid marriage status. The agreement simply provided that alimony was payable until appellee remarried. The word "Remarriage" is an ordinary one in common usage and the agreement contains nothing to indicate anything other than its use in its popular or conventional sense was intended. Certainly appellee must have understood that by remarrying she was abandoning her claim for support under the agreement, for better or for worse, in favor of whatever support would be furnished by her new spouse. Appellee remarried and the alimony ceased. There is nothing in the agreement which can serve as any basis for its subsequent revival (see *Gaines v. Jacobsen*, 308 N. Y. 218, 124 N. E. 2d 290, 48 A. L. R. 2d 312). It may be noted in passing that alimony is now obtainable in Kansas in connection with an annulment (K. S. A. 1971 Supp. 60-1610 [c]).

We hold that the manifest intention of the parties expressed in their agreement was that the obligation imposed on the husband to

provide alimony to his divorced wife until her remarriage should terminate upon such remarriage even though such marriage is voidable, and the obligation was not revived by the subsequent annulment of the remarriage. Applied here, this means the trial court erred in denying the relief sought by appellant and that judgment must be reversed.

At the time this appeal was argued and submitted appellant had paid into court as alimony for appellee since the time of her remarriage the sum of $10,200. By way of restitution appellant is entitled to judgment against appellee for that amount and it is so ordered. It must be borne in mind judgments for alimony and for child support are entirely separate and distinct and that payment or overpayment of the one does not result in payment of the other (*Ediger v. Ediger,* 206 Kan. 447, 479 P. 2d 823); further, that the district court remains open to modify any order of child support as may be warranted upon application and full hearing of all the circumstances.

The judgment is reversed and remanded with directions to proceed in accordance with the views herein expressed.

APPROVED BY THE COURT.