(592 P.2d 132)

No. 49,856

GALE F. JOHNSTON, *Appellee,* v. DAVE J. JOHNSTON, *Appellant.*

Opinion filed March 23, 1979.

*Gordon B. Stull* of Hampton, Hampton & Stull, of Pratt, for the appellant.

*Larry T. Solomon* of Wunsch, Wunsch & Gaumer, of Kingman, for the appellee.

Before REES, P.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: The defendant husband appeals from a decision requiring him to continue the payment of a previously entered alimony award where his former wife, subsequent to her divorce from the defendant, married another in the State of Colorado and then invalidated that marriage in the same state, alleging that she lacked capacity to enter into the marriage contract because she lacked mental capacity to consent to the marriage.

Plaintiff and defendant were married in Kansas on June 4, 1968, and at the time of the filing of the divorce petition (January 26, 1973) were residents of Pratt County. The parties were divorced on July 17, 1973, and the decree of divorce was filed on August 1, 1973. The decree, in addition to the usual orders as provided for in K.S.A. 60-1610, specifically disapproved that part of the property settlement agreement executed by the parties which provided for the payment of alimony by the defendant to

the plaintiff (as set forth in paragraph 6 of said agreement) and in lieu thereof ordered as follows:

"[I]t is found and ordered that for the purpose of offsetting the property of the parties award[ed] to the husband by the Agreement, the husband is ordered to pay to the wife the sum of Eighteen Thousand Dollars ($18,000.00) as follows:

$600.00 per month for twelve (12) months;

$500.00 per month for the next twelve (12) months;

$200.00 per month for the next twenty-four (24) months.

As long as such payments are made as they become due, they will not bear interest; any payments in default to draw interest at eight percent (8%). In addition to such award, the Defendant is ordered to pay alimony to the Plaintiff in the sum of One Hundred Dollars ($100.00) per month beginning forty-eight (48) months from the payment of the first $600.00 monthly payment ordered above, and *continuing until such time as Plaintiff remarries*. In case Plaintiff remarries prior to the time these alimony payments commence, she will not be entitled to receive any of the alimony award. The Defendant shall be entitled to credit for payments already made on the Property Settlement Agreement through July, 1973, in the aggregate sum of $3,600.00." Emphasis added.

The plaintiff subsequently married Randall Lee Coppernoll in the State of Colorado on July 13, 1976, and at a later date petitioned the Colorado court for a declaration of invalidity of said marriage. The petition was tried to the court in Colorado on October 29, 1976, and the trial court made the following findings and order:

"1. The Court has jurisdiction over the parties and subject matter of this action.

"2. The marriage between the parties was entered into on July 13, 1976 in Denver, Colorado.

"3. The petitioner, Gale F. Coppernoll, at the time of the consummation of the marriage, lacked the capacity to consent to the marriage because of mental incapacity.

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that a Declaration of Invalidity be entered, and the marriage between the parties hereto is hereby declared invalid as of July 13, 1976, and that the former name of petitioner, Gale F. Johnston be and is hereby restored to her."

It is readily apparent that the Colorado marriage of the plaintiff was declared invalid because of the plaintiff's lack of mental capacity. Under Colorado law, a marriage may be declared invalid for mental incapacity at the time of marriage and said marriage is voidable. Colo. Rev. Stat. § 14-10-111 states:

"**Declaration of invalidity.** (1) The district court shall enter its decree declaring the invalidity of a marriage entered into under the following circumstances:

"(a) A party lacked capacity to consent to the marriage at the time the marriage

was solemnized, either because of mental incapacity or infirmity or because of the influence of alcohol, drugs, or other incapacitating substances.

. . . .

"(2) A declaration of invalidity under subsection (1) of this section may be sought by any of the following persons and shall be commenced within the times specified, but in no event may a declaration of invalidity be sought after the death of either party to the marriage, except as provided in subsection (3) of this section:

"(a) For the reasons set forth in either subsection (1) (a), . . . by either party to the marriage who was aggrieved by the conditions or by the legal representative of the party who lacked capacity to consent no later than six months after the petitioner obtained knowledge of the described condition;

. . . .

"(5) Marriages declared invalid under this section shall be so declared as of the date of the marriage."

Defendant had completed all of the cash property settlement payments; however, he refused to make any alimony payments because plaintiff had remarried before the first alimony payment was due. Plaintiff then commenced a contempt proceeding to enforce the payment by defendant of the monthly alimony award, contending that her Colorado marriage did not constitute a "remarriage" that would terminate alimony under her Kansas decree of divorce. Plaintiff's position is that under Kansas law a marriage by a mentally incapable person is a void marriage and as such is not considered to be a marriage at all, whereas defendant contends that the plaintiff's marriage was only voidable in Colorado, and under Kansas law a marriage that is voidable, even though annulled, is a marriage that would terminate alimony under the divorce decree.

The defendant does not argue that under Kansas law a marriage is void and of no effect where it is contracted by a mentally incapable person. Since this proposition is not contested by the defendant, no further discussion of this issue will be made by this court.

The trial court found:

"3. That said Colorado Declaration of Invalidity (or annulment) is res judicata between the parties and unassailable collaterally.

"4. That the effect of said Colorado annulment under Kansas law was that there was actually no marriage at all, and thus the Defendant's obligation to pay alimony to Plaintiff has not terminated."

In the case of *Sutton v. Leib*, 342 U.S. 402, 96 L.Ed. 448, 72 S.Ct. 398 (1952), the United States Supreme Court stated that a state must give full faith and credit to a decree of annulment

rendered in another state, but could determine the effects of that decree on alimony payments from a prior divorce according to the law of the state where the original divorce decree was rendered. Therefore, Kansas law may be applied to determine whether the alimony payments in this case are to continue.

In *Johnson County National Bank & Trust Co. v. Bach,* 189 Kan. 291, 369 P.2d 231 (1962), the Kansas Supreme Court held that a marriage declared void because of bigamy did not terminate a wife's right to receive payments from a trust fund, where the trust terms specifically provided that payments were to cease upon the wife's remarriage. The court based this ruling on the nature of a void marriage, which is defined in this manner:

> "A void marriage may be treated as void by the parties to it and by all the world. It is good for no legal purpose, and is not attended or followed by any of the incidents of a valid marriage." p. 295.

In *Dodd v. Dodd,* 210 Kan. 50, 499 P.2d 518 (1972), the Kansas Supreme Court stated that alimony payments under a previous divorce decree would terminate upon the wife's remarriage. In its attempt to define "remarriage" the court stated that if the second marriage was void, there was never any marriage to begin with and the alimony payments would not cease. The court based this conclusion on *Powell v. Powell,* 18 Kan. 371 (1877), which held that a marriage terminated due to incompetency of a party was void. If, however, the marriage was merely voidable, this constituted a remarriage within the plain meaning of the divorce decree and the payments could be terminated.

Since the Colorado marriage was invalidated because of the incompetency of one of the parties, *Powell* would control the effect the Colorado decree would have on the alimony payments from the former divorce decree, and as a result the payments of alimony must continue. The *Dodd* case seems to tacitly agree that such marriage is not a "remarriage" under Kansas law.

Judgment of the trial court is affirmed.