No. 72,441

In the Matter of the Marriage of KIM RENE (QUINT) PFEIFER, *Appellee*, and CARL A. QUINT, *Appellant*.

(907 P.2d 818)

Opinion filed December 8, 1995.

*John T. Bird*, of Glassman, Bird & Braun, of Hays, was on the brief for the appellant.

*Paula D. Hofaker*, of Jones & Weller, P.A., of Hill City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ABBOTT, J.: The issue before us is whether court-ordered spousal maintenance automatically ceases upon the recipient spouse's remarriage.

The Quints were divorced in June 1991. Mr. Quint was ordered to pay spousal maintenance in the amount of $125 per month for a period of 30 months, "so long as the petitioner [did] not remarry or cohabitate with a member of the opposite sex." On December 31, 1991, the petitioner remarried and became Mrs. Pfeifer.

Quint filed a completed, but uncertified, copy of Pfeifer's marriage license with the trial court that granted the divorce. No court action was requested or taken as a result of the remarriage or the filing of the executed marriage license. Quint did not file a motion to modify or terminate spousal maintenance. Quint did not pay any maintenance to Pfeifer after her remarriage, contending her remarriage had automatically terminated his maintenance obligation.

At this time, Pfeifer did not file a motion to compel Quint to pay spousal maintenance.

On June 21, 1994, some 2½ years after her remarriage, Pfeifer obtained a garnishment to recover unpaid spousal maintenance. Quint filed a motion to set aside the garnishment, contending that his spousal maintenance obligation had automatically terminated upon his ex-wife's remarriage. Pfeifer asserted that the maintenance obligation had not terminated because Quint did not file a motion to modify or terminate spousal maintenance upon her remarriage.

The district court found Quint's spousal maintenance obligation automatically terminated upon Pfeifer's remarriage on December 31, 1991. Thus, the district court held that all spousal maintenance payments due after Pfeifer's December 1991 remarriage were void.

Pfeifer appealed and, relying on *Herzmark v. Herzmark*, 199 Kan. 48, 427 P.2d 465 (1967), (a 4 to 3 decision) the Court of Appeals reversed in an unpublished opinion filed April 21, 1995, and remanded the case to the district court. In *Herzmark*, the divorce decree stated the maintenance would continue *"until the further order of the court."* 199 Kan. at 49. Upon the payee's remarriage, *Herzmark* stated that this occurrence established a prima facie case for termination of maintenance. However, under *Herzmark*, the maintenance obligation did not terminate *automatically* upon the payee's remarriage. If it had, the court reasoned, then the court would not have an opportunity to inquire into the validity of the remarriage. The Court of Appeals asserted that neither the district court nor the payor could escape the *Herzmark* rule simply by including a statement in the journal entry which states that maintenance terminates upon the payee's remarriage. According to the Court of Appeals, Quint should have filed a motion to terminate or modify maintenance upon Pfeifer's remarriage. Since he did not, the Court of Appeals found that all of Quint's maintenance payments were due and owing.

K.S.A. 60-1610(b)(2) allows a district court to include conditions for the termination of maintenance in a divorce decree. The decree at issue specifically states that Pfeifer's remarriage is a condition for termination of maintenance. The question we must answer is

whether maintenance automatically terminates upon the occurrence of this condition. To answer this question, we must interpret K.S.A. 60-1610(b)(2) and the divorce decree. Statutory interpretation is a question of law. As such, this court exercises an unlimited, de novo standard of review. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994).

Pfeifer contends that the automatic termination of a payor's maintenance obligation upon the payee's remarriage is improper for two reasons. First, she contends that the remarriage may be invalid. Relying on *Johnston v. Johnston*, 3 Kan. App. 2d 208, 592 P.2d 132 (1979), Pfeifer points out that a marriage license alone is not enough to prove that a payee is validly remarried. The payor's maintenance obligation is not necessarily terminated upon the payee's apparent remarriage. Thus, the payor should be required to bring a motion and prove the payee is validly remarried. In response to this motion, the payee should have an opportunity to offer a defense, such as the invalidity of the marriage or the existence of special circumstances, before the maintenance is terminated. Pfeifer contends this opportunity for a defense would not exist if the payor's maintenance obligation automatically terminated upon the payee's remarriage.

In *Johnston v. Johnston*, 3 Kan. App. 2d at 209, the divorce decree ordered the payor to pay maintenance to the payee "continuing until such time as [the payee] remarries. In case [the payee] remarries prior to the time these alimony payments commence, she will not be entitled to receive any of the alimony award." Subsequently, the payee remarried in Colorado. The payor did not make any maintenance payments because the payee had remarried before the first maintenance payment became due. 3 Kan. App. 2d at 210. Later, the Colorado court declared the payee's remarriage invalid due to the payee's mental incapacity to enter into a marriage. 3 Kan. App. 2d at 209. Consequently, the payee commenced a contempt proceeding against the payor to enforce payment of the maintenance obligation. The payee contended that her remarriage did not terminate the payor's maintenance obligation under the divorce decree because in Kansas a marriage by a mentally incompetent person is void. As a void marriage, it never existed

and therefore never terminated the payor's maintenance obligation. On the other hand, the payor contended that Colorado, the state which found the payee's remarriage to be invalid due to her mental incompetence, considered a marriage by a mentally incompetent person only to be voidable, not void. 3 Kan. App. 2d at 210. The Court of Appeals held that the Colorado marriage was void and therefore never existed. Thus, the payee's remarriage never occurred, and the payor's maintenance obligation was never terminated. 3 Kan. App. 2d at 211. Pfeifer points to *Johnston* in order to demonstrate the importance of allowing a payee the opportunity to present a defense before the maintenance is automatically terminated upon the payee's remarriage.

Quint does not attempt to distinguish *Johnston*. Rather, he relies on *Johnston* for two of his own arguments. First, Quint points to *Johnston*'s distinction between void and voidable remarriages. The Court of Appeals held that a void marriage did not terminate the payor's maintenance obligation, yet if "the marriage was merely voidable, . . . the [maintenance] payments could be terminated." 3 Kan. App. 2d at 211. Relying on this language, Quint contends that the payee's remarriage, even if voidable, automatically terminates the payor's maintenance obligation, unless the payee can prove her remarriage is void.

Next, Quint asserts the payee's use of contempt proceedings in *Johnston* illustrates that a payee will still have an opportunity to present a defense if maintenance is automatically terminated upon the payee's remarriage. Once the payee remarries and the maintenance automatically terminates, the payee can bring a motion to reinstate maintenance and present his or her defense in this manner. Thus, according to Quint, the automatic termination of maintenance upon the payee's remarriage does not deprive the payee of the opportunity to present a defense. It simply forces the payee to initiate the court action should there be a legitimate question as to the validity of the payee's remarriage.

Furthermore, Quint points to K.S.A. 60-1610(b)(2), which states:

"The decree may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable

under all of the circumstances. The decree may make the future payments modifiable or terminable under circumstances prescribed in the decree. The court may make a modification of maintenance retroactive to a date at least one month after the date that the motion to modify was filed with the court. In any event, the court may not award maintenance for a period of time in excess of 121 months. If the original court decree reserves the power of the court to hear subsequent motions for reinstatement of maintenance and such a motion is filed prior to the expiration of the stated period of time for maintenance payments, the court shall have jurisdiction to hear a motion by the recipient of the maintenance to reinstate the maintenance payments. Upon motion and hearing, the court may reinstate the payments in whole or in part for a period of time, conditioned upon any modifying or terminating circumstances prescribed by the court, but the reinstatement shall be limited to a period of time not exceeding 121 months. The recipient may file subsequent motions for reinstatement of maintenance prior to the expiration of subsequent periods of time for maintenance payments to be made, but no single period of reinstatement ordered by the court may exceed 121 months. Maintenance may be in a lump sum, in periodic payments, on a percentage of earnings or on any other basis. At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree. Every order requiring payment of maintenance under this section shall require that the maintenance be paid through the clerk of the district court or the court trustee except for good cause shown."

Relying on this statute, Quint contends that the automatic termination of maintenance upon the payee's remarriage does not deprive the payee of an opportunity to present a defense. After all, if a payee desires to reinstate maintenance after his or her remarriage due to special circumstances or the invalidity of the remarriage, the payee has the opportunity to file with the court a motion to reinstate maintenance. K.S.A. 60-1610(b)(2). Quint points out that in this case there is no contention that the remarriage is invalid. He also points out that he never gave consent to increase his maintenance obligation or continue its payment beyond the occurrence of the payee's remarriage. Thus, under K.S.A. 60-1610(b)(2), the maintenance could not have continued beyond the payee's remarriage and should have automatically terminated upon this remarriage.

Next, Pfeifer contends a payor's maintenance obligation should not terminate automatically upon the payee's remarriage because this concept is inconsistent with Kansas case law. According to Pfeifer, *Wright v. Wright*, 209 Kan. 628, 498 P.2d 80 (1972), and *Herzmark v. Herzmark*, 199 Kan. 48, found that a payee's remarriage does not necessarily terminate maintenance if special circumstances exist which justify continuation of the maintenance. Specifically, *Herzmark*, 199 Kan. at 54, found that the automatic termination of maintenance upon the payee's remarriage would create problems if the remarriage turned out to be invalid. Thus, Pfeifer contends these cases indicate a motion to terminate maintenance is required in order to terminate maintenance upon the payee's remarriage.

In *Herzmark*, 199 Kan. at 51, the divorce decree ordered the payor to pay the payee maintenance "until the further order of the court." The payee remarried. Subsequently, the payor filed a motion to modify the maintenance. The district court ordered a reduction in maintenance due to the remarriage, but it did not extinguish the maintenance entirely. The payor appealed this decision. The court pointed to K.S.A. 1965 Supp. 60-1610(c), which allowed modification of maintenance on order of the court. 199 Kan. at 51, 52-53. This court did not find a specific statutory provision which required the termination of maintenance upon the payee's remarriage. However, the court found it was against public policy to allow a payee to hold a claim against his or her former spouse for maintenance and hold a claim against his or her current spouse for the marital duty of support. Regardless of this policy problem, the court held that it was inappropriate to automatically terminate maintenance upon the payee's remarriage. 199 Kan. at 54. As the court stated:

"We do not feel that our statute indicates an intention by the legislature to have alimony payments automatically terminate on remarriage of the recipient. . . . Automatic termination would raise problems concerning subsequent inquiry into the validity of a remarriage which might well be determined on motion to terminate the alimony payments.

"After considering the statute and the decisions of this court we believe the remarriage of a divorced person, who is the recipient of alimony payments, does not of itself terminate the right to alimony. However, proof of a valid remarriage

does make a prima facie case which requires the court to end it, in the absence of proof of some extraordinary circumstances justifying its continuance." 199 Kan. at 54.

In *Wright v. Wright*, 209 Kan. at 629, the divorce decree awarded a court-ordered lump sum maintenance payment to the payee that was *not* to terminate "because of the death or remarriage of the [payee]." Subsequently, the payee remarried. The payor filed a motion to terminate maintenance due to the payee's remarriage. Relying on the terms of the divorce decree and the district court's authority to determine maintenance termination conditions under K.S.A. 60-1610(c), the district court denied the payor's motion. Upon the payor's appeal, this court reversed the district court. This court pointed to K.S.A. 1971 Supp. 60-1610(c), which allowed the district court to modify maintenance. Moreover, citing the *Herzmark* rule, this court asserted that the payee's remarriage does not automatically terminate the payor's maintenance obligation. However, "proof of remarriage *on a motion to modify* makes out a prima facie case requiring termination of future alimony payments." (Emphasis added.) 209 Kan. at 630. Thus, the court stated:

"The issue presented in the case at bar is essentially this: Can a district court avoid the rule of Herzmark . . . by providing in the decree that alimony is not subject to modification or termination on death or remarriage of the wife? We hold that the answer to this question is in the negative." 209 Kan. at 631.

*Wright* held that the trial court should have terminated the payor's remaining maintenance obligation upon the payor's motion due to the payee's remarriage and the nonexistence of special circumstances justifying the continuation of maintenance. 209 Kan. at 631. Following *Wright*, the Court of Appeals in this case held that neither the district court nor the payor could escape the *Herzmark* rule simply by including a statement in the journal entry which states that maintenance terminates upon the payee's remarriage.

Pfeifer concedes that *Wright* and *Herzmark* are not exactly on point. The divorce decrees in these cases did not specifically state the maintenance was to terminate upon remarriage as the *Quint* journal entry did. However, Pfeifer contends that the *Wright* and

*Herzmark* holdings were based on the rationale that the payee may have a defense to the remarriage which should be heard before the maintenance is terminated. She contends this same rationale exists in this case even though the decree specifically states remarriage is a termination condition.

Quint attempts to distinguish *Wright* and *Herzmark*. He points out that the payee's remarriage was not a termination factor specifically defined in the *Wright* or *Herzmark* divorce decrees. Rather, in the decrees, the maintenance either continued until further order from the court or stated that maintenance was *not* to terminate upon remarriage. *Wright*, 209 Kan. at 629; *Herzmark*, 199 Kan. at 51. Thus, it was necessary for the payors to file a motion to terminate maintenance in order for the court to determine whether remarriage was an appropriate event to terminate maintenance in these cases. We agree with Quint that these cases are distinguishable from the one at hand. The *Quint* journal entry specifically states that remarriage is an appropriate event to terminate maintenance. There is no need for a court to determine if remarriage is an appropriate event for the termination of maintenance, as there was in the prior cases, because this determination has already been made by the district court and stated in the journal entry. Thus, under the journal entry, the maintenance terminates automatically upon the occurrence of a terminating event, such as remarriage. The parties are well aware of the terminating event, and it seems inherently unfair to require the payor to constantly monitor the payee's marital status and for the payee to profit by not revealing the occurrence of a terminating event.

Quint also attempts to distinguish two other cases which deal with similar issues—*Beck v. Beck*, 208 Kan. 148, 490 P.2d 628 (1971), and *In re Marriage of Cray*, 18 Kan. App. 2d 15, 846 P.2d 944 (1993), *rev'd in part on other grounds* 254 Kan. 376, 867 P.2d 291 (1994). In *Beck*, the journal entry of divorce awarded a lump sum maintenance to the payee " 'until fully paid or until further order of the court.' " 208 Kan. at 148. The payee remarried, and the payor filed a motion to terminate maintenance due to the remarriage. Taking judicial notice of the remarriage, the trial court

reduced the maintenance but did not terminate it entirely. The payor appealed. The court stated:

"[T]his case is controlled by *Herzmark v. Herzmark*, 199 Kan. 48, 427 P.2d 465. In that case three members of this court were of the view that the remarriage of a recipient of alimony should operate ipso facto to terminate the obligation to pay future alimony. The majority were unable to go so far, but did hold that proof of remarriage makes a prima facie case requiring termination of future alimony unless the recipient proves special circumstances justifying its continuance. No such evidence was introduced here, and *Herzmark* would appear to dictate a reversal." 208 Kan. at 148-49.

The court found the payee was remarried and no special circumstances justified the continuation of maintenance. Thus, the maintenance was terminated due to the wife's remarriage. 208 Kan. at 150.

In *Cray*, 18 Kan. App. 2d at 30, the divorce decree omitted conditions for the termination of maintenance altogether. The payor argued that the trial court was in error by omitting a provision in the divorce decree which specifically stated the payor's maintenance obligation would terminate on the payee's remarriage. The court stated the general rule that "[p]roof of remarriage by the recipient of maintenance and a *motion to terminate* presents a prima facie case for termination of maintenance absent proof by the recipient of strong compelling circumstances why the maintenance should not cease. [Citations omitted.]" (Emphasis added.) 18 Kan. App. 2d at 30. This rule applies whether remarriage is included in the journal entry as a termination condition or not. Thus, the court found the trial court was not in error when it did not include a specific provision in the decree allowing for the termination of maintenance upon remarriage. 18 Kan. App. 2d at 32.

Quint attempts to distinguish *Beck* and *Cray* in the same manner as he distinguished *Wright* and *Herzmark*. In these two cases, remarriage did not automatically terminate the payor's maintenance obligation because a district court had not made a prior determination that remarriage was an appropriate event upon which to terminate maintenance. Neither the *Beck* nor *Cray* divorce decrees listed remarriage as a termination condition. The decrees either awarded maintenance until further order of the court or omitted

termination conditions altogether. *Beck*, 208 Kan. at 148; *Cray*, 18 Kan. App. 2d at 30.

In *In re Estate of Sweeney*, 210 Kan. 216, 500 P.2d 56 (1972), this court found that maintenance provided for in a divorce decree *automatically* terminates upon the *death* of the payor. This is true even if the decree does not provide for death as a termination condition. In fact, maintenance may only continue beyond the payor's death if the language in the decree makes it unmistakably clear that the maintenance is to continue beyond the payor's death. 210 Kan. 216, Syl. ¶ 1. Thus, Quint contends that remarriage should automatically terminate the payor's maintenance obligation just as death does. Pfeifer attempts to distinguish *Sweeney*. She asserts that there is no defense to death, such as invalidity; therefore, the payee does not need an opportunity to present a defense before maintenance is terminated. Yet a payee may have a defense for a remarriage, such as invalidity or incompetence. Thus, Pfeifer contends that the payee's maintenance should not be terminated automatically before the payee has an opportunity to present a defense. According to Pfeifer, maintenance should only terminate on the payor's motion after the payee has had the opportunity to present her defense.

Both Pfeifer and the district court point out that there are no cases directly on point regarding this issue. One case which is not cited by either party sheds some additional light on the problem. In *Dodd v. Dodd*, 210 Kan. 50, 51, 499 P.2d 518 (1972), the parties entered into a settlement agreement which required the payor to pay maintenance to the payee "until and unless such time as the death or remarriage of [the payee] nullifies this agreement." The trial court approved the separation agreement and merged it into the divorce decree by reference. Later, the payee remarried in another state. Soon thereafter, this remarriage was annulled. The payee did not inform the payor of her remarriage and subsequent annulment, and the payor continued to make regular maintenance payments. Later, when the payor became aware of the remarriage, he filed a motion to terminate maintenance. The payor requested that his maintenance obligation be terminated retroactively back to the date of the payee's remarriage and that he be granted a

judgment against the payee for the amount of maintenance payments he had paid since her remarriage.

The court found the annulled remarriage was voidable, but not void. The court pointed out that the separation agreement said nothing regarding the status of the remarriage. The agreement simply stated that maintenance was to terminate upon the payee's remarriage. The journal entry in this case is similar in that it states the maintenance will terminate upon remarriage. It does not state that the maintenance will terminate upon Pfeifer's remarriage *and* Quint's filing of a motion to terminate. Relying on an absence of any conditional language beyond remarriage, the *Dodd* court stated: "Certainly [the payee] must have understood that by remarrying she was abandoning her claim for support under the agreement, for better or for worse, in favor of whatever support would be furnished by her new spouse. *[The payee] remarried and the alimony ceased.*" (Emphasis added.) 210 Kan. at 55. Thus, this court held the payor's maintenance obligation terminated upon the payee's remarriage even though the marriage was voidable.

The court then pointed out that the payor had paid $10,200 in maintenance payments since the payee's remarriage. The court granted the payor a judgment against the payee in order to collect in restitution all of the maintenance payments made by the payor since the payee's remarriage. This judgment indicates that the court found the payor's maintenance obligation ended automatically upon the payee's remarriage. Hence, the payor was allowed to recover the payments made since the remarriage. The obligation did not terminate once the payor became aware of the remarriage and filed the motion to terminate. The *Dodd* case is the only case discussed herein which specifically lists remarriage in the divorce agreement as a condition for maintenance termination. While the *Dodd* remarriage condition was defined in a separation agreement, and the Quint remarriage condition was ordered in a decree, this distinction is irrelevant, especially since the *Dodd* separation agreement was merged into the divorce decree. We think that the payor's maintenance obligation in this case should be treated as the payor's maintenance obligation was treated in *Dodd*.

Maintenance payments automatically cease upon the payee's remarriage when the judgment awarding maintenance so provides, in the absence of statutory provisions to the contrary and subject to the payee showing the alleged remarriage is void. Thus, we find Quint's maintenance obligation automatically terminated upon Pfeifer's remarriage.

Furthermore, adopting a rule that maintenance payments automatically cease upon the payee's remarriage when the judgment so provides is consistent with the reasoning in *Brady v. Brady*, 225 Kan. 485, 592 P.2d 865 (1979). *Brady* dealt with an award of child support for several children which did not specify the amount awarded per child. The issue in *Brady* was whether the child support payment should be reduced when one or more of the children were no longer eligible for child support payments.

In adopting a proportionate share rule of divisibility, the court stated:

"When a child attains the age of majority, or when a child goes to live with the other parent, or when a child dies, the obligation to pay support *for that child* should *automatically* cease and terminate unless the agreement provides otherwise.

"Under the proportionate share rule of divisibility, needless litigation will be avoided because neither party will be required to seek an immediate court order. If, however, the proportionate share is unfair under the circumstances, either party can apply to the court for a change under K.S.A. 1978 Supp. 60-1610(*a*). In any event, the parent who pays support pursuant to a lump sum award should be allowed to reduce support proportionately as the children become of age without returning to court each time.

"Our prior decisions and statutory law also support this position. K.S.A. 1978 Supp. 60-1610(*a*) provides that any order requiring either parent or both parents to pay for the support of any child until the age of majority *shall terminate when such child attains the age of eighteen (18) years*, unless by prior written agreement approved by the court such parent or parents specifically agreed to pay such support beyond the time such child attains the age of eighteen (18). Here the divorce decree ordered child support payments to continue 'until further order of the court.' Actually, a divorce court has no power to continue a provision for support of a child after the child attains the age of majority. An order for support of a child 'until further order of the court' does not mean that payments will accrue after the child becomes of age until the court makes a further order. The order terminates when the child attains majority without further order." 225 Kan. at 491-92.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.