No. 121,605

COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

STEVEN P. WELTER,
*Appellant*,

and

KIERA J. WELTER,
*Appellee*.


SYLLABUS BY THE COURT


1.

Spousal maintenance payments automatically cease upon the payee's cohabitation when the judgment awarding maintenance so provides, in the absence of statutory provisions to the contrary.


2.

When a divorce decree states that a certain event shall terminate maintenance and the district court finds that the terminating event occurs, the district court lacks the power to modify rather than terminate maintenance.


3.

The district court has wide discretion to adjust the financial obligations of the parties in initially determining maintenance, within the limits of the statutes governing maintenance. But once a divorce decree is filed, the court's ability to "do equity" is curtailed by the express provisions of the divorce decree and by the governing statutes. So a district court abuses its discretion by trying to do under its equitable powers that which is contrary to the terms of the divorce decree or the maintenance statutes.

1

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed September 11, 2020. Reversed and remanded with directions.

*Courtney J. Whiteley*, of Cordell & Cordell, P.C., of Independence, MO, for appellant.

*Lewanna Bell-Lloyd*, of Olathe, for appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

GARDNER, J.:  Steven Welter appeals the district court's denial of his motion to terminate spousal maintenance to his ex-wife, Keira Welter. Steven argues that his duty to pay spousal maintenance automatically terminated in accordance with the terms of their divorce decree when Keira cohabited with another person, so the district court abused its discretion by modifying payments rather than terminating them. We agree.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2016, Steven petitioned to divorce Keira. At the divorce trial, the parties disputed how much spousal maintenance Steven would provide Keira. Steven claimed that Keira earned $48,000 a year and asked the district court to set maintenance at $500 a month for a year. Keira requested $1,457 a month for 76 months.

The divorce decree ordered Steven to provide maintenance of $781 for 73 months through income withholding. The decree, which was not the product of a settlement agreement, included these conditions of termination:

"The spousal maintenance payments shall terminate upon any of the following: the expiration of the term period set above; the death of either party; remarriage of [Keira]; or [Keira's] 'cohabitation,' defined as living with a non-relative adult for substantially

2

consecutive periods of time in excess of thirty (30) days, even if said relationship does not amount to marriage-like 'cohabitation' under the common law of Kansas."

The decree's only other language regarding spousal maintenance stated: "Spousal maintenance shall be modifiable pursuant to K.S.A. 23-2901 through 23-2904, but may not be modified or reviewed more than one (1) occasion every two (2) years. For the [Court] to hear a motion to modify, there must exist a departure of at least ten percent (10%)."

In early 2018, contrary to a court order, Keira refused to sign closing documents for the sale of the marital home. So, on February 1, 2018, the district court temporarily suspended Steven's payment of maintenance and ordered Keira to begin making the mortgage payments. After a hearing, the district court made those orders permanent until Keira executed the necessary closing documents. But Keira never signed the documents, the buyer rescinded the contract, and the sale of the house fell through.

In June 2018, the district court found Keira in contempt of court because she had

- violated his order to execute the closing documents;
- violated his order that she make monthly mortgage payments;
- removed items from the house that were not hers; and
- trashed the house.

The district court ordered Kiera to pay Steven's attorney fees associated with her contempt, to reimburse her court-appointed attorney's fees, and to report to the county jail if she failed to sign closing documents on another offer for the house.

Keira apparently signed the closing documents, as the house later sold. The district court then decided how to distribute the proceeds. To account for money Keira owed

3

Steven, the district court vacated Steven's monthly maintenance payments from November 2018 through March 2019.

In December 2018, Steven moved to terminate spousal support. He asserted that Keira had been cohabitating with her boyfriend, Todd McGhee, and relied on the clause in the divorce decree that "spousal maintenance payments shall terminate upon . . . cohabitation." In May 2019, the district court held a hearing on the matter.

During the hearing, Keira argued that it would be inequitable to terminate spousal support. She lived with McGhee only because she was not then receiving maintenance payments and could not live on her own or with a family member. Keira was unemployed from June 2017 to December 7, 2018. She fell behind on rent in December 2017 and was evicted in May 2018. The parties stipulated that Keira had resided with McGhee from June 2018 until February 2019. For a short time, Keira lived with her mother in Joplin, Missouri but that was not a long-term option. So McGhee, whom Kiera had been dating, invited her to live with him. She did so for around nine months, then moved into an apartment in February 2019.

While living with McGhee, Keira did not pay rent or pay utilities. While McGhee was at work, Keira would babysit his minor son without compensation. She made meals for him and did household chores. She spent Independence Day and Christmas with McGhee and his son. McGhee paid for Keira's cellphone, car insurance, and gas. Keira admitted that she received a material financial gain or benefit from her relationship and residence with McGhee.

After hearing the testimony, the district court denied Steven's motion to terminate maintenance. Yet the district court found that Keira had violated the cohabitation termination condition in the divorce decree during the nine months she lived with McGhee. It also found that she cohabited in a marital-like relationship as in *In re*

4

*Marriage of Kuzanek*, 279 Kan. 156, 158-62, 105 P.3d 1253 (2005) (applying the definition of "cohabitation" from *In re Marriage of Kopac*, 30 Kan. App. 2d 735, 737, 47 P.3d 425 [2002]). Although it found that Keira met the cohabitation terms of the divorce decree, the district court decided not to terminate maintenance. Rather, it merely reduced the term of Steven's maintenance payments by nine months—the time Keira had cohabited with McGhee.

The district court styled its order as a modification of the terms of spousal maintenance to balance the equities:

"It's not escaping the Court here that wife continues to, I'm just going to say in a train wreck like fashion, make these decisions that just causes her untold consequences."

"Now, this is a decision I've made today that husband is probably going to have a long talk with his lawyer about appealing it. Because, I mean, you read these facts of *Kuzanek*, and I'm finding that, consistent with *Kuzanek*, she lived and cohabited in this marital-like relationship during the period of time. I mean, the facts you can overlay them. There are some differences and distinctions, but I think those are not significant. Husband may well—may well want to appeal it. I don't know."

"But from wife's perspective, she can't keep making the decisions that she has made postdivorce without consequence. It absolutely violates the specific language as well as the intent of the Court's orders. We can't undo the things that have been done. But I'm going to style my ruling today as a modification of the spousal maintenance orders in this case insofar as the term has been reduced as I have indicated."

. . . .

"So, in my own verbiage, wife dodged a bullet here. She really dodged a bullet. I came very close to following exactly what *Kuzanek* says, but I didn't. I just reduced the term. If this comes up again, I'll be more inclined than I am today to cut it off completely. I can't emphasize this strongly enough. Wife needs to make better decisions. There's

5

consequences. If this comes up again, the consequences will likely be more severe than they are—for her.

"I mean, I realize I have two parties here, you know. Husband is sitting over there saying, well, gees, the Judge just said she was cohabitating in violation of the 30 days, how come that doesn't end it all. I mean, he's sitting over there. I'm trying to balance the equities here, and that's my ruling."

Steven timely appeals.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY REDUCING SPOUSAL MAINTENANCE RATHER THAN TERMINATING IT?

On appeal, Steven argues the district court abused its discretion by not terminating spousal maintenance after it found that Keira had cohabited with McGhee, meeting that termination condition in the divorce decree. Steven asserts his duty to pay spousal maintenance automatically terminated when Keira lived with McGhee for thirty days, citing in *In re Marriage of Quint*, 258 Kan. 666, Syl. ¶ 2, 907 P.2d 818 (1995) and *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 940, 381 P.3d 490 (2016). Thus, the district court lacked the power to modify the divorce decree under K.S.A. 2019 Supp. 23-2903.

We note that neither party contends that the divorce decree retained jurisdiction under K.S.A. 2019 Supp. 23-2904 for the district court to reinstate maintenance, or that the district court reinstated maintenance after it had terminated. The parties focus their arguments on modification, not reinstatement, of maintenance. We do the same.

Steven contends that maintenance automatically terminated when Keira cohabited, as set forth in the divorce decree. Keira counters that because the district court had suspended or vacated maintenance during the time she lived with McGhee, her acts had no effect on Steven's duty to pay maintenance. In the alternative, Keira claims that under

6

K.S.A. 2019 Supp. 23-2903, the district court can modify a maintenance obligation at any time. Lastly, she claims the district court properly exercised its equitable discretion in reducing, rather than terminating, maintenance.

STANDARD OF REVIEW

This court reviews a denial of a motion to terminate spousal support under the same standard as a review of a motion to modify maintenance, thus we apply a bifurcated standard. See *Knoll*, 52 Kan. App. 2d at 935. We review whether the trial court's factual findings are supported by substantial competent evidence and whether the trial court abused its discretion. 52 Kan. App. 2d at 935.

Steven does not dispute any of the district court's factual findings. And Keira does not dispute the district court's finding that she violated the cohabitation termination condition of the divorce decree by living with McGhee from June 2018 to February 2019. Thus we review this case only for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). "[F]or a district court decision to receive a full measure of . . . deference under the abuse of discretion standard, it must have been based upon a correct understanding of the law." *State v. Hulett*, 293 Kan. 312, 318-19, 263 P.3d 153 (2011).

ANALYSIS

Spousal maintenance, formally called alimony, is a discretionary order the district court may impose to obligate one spouse to pay the other spouse for future support. See K.S.A. 2019 Supp. 23-2901 et seq. A district court may award spousal maintenance, as well as set conditions for modification and termination of future maintenance, in a divorce decree. K.S.A. 2019 Supp. 23-2711(a)(3); K.S.A. 2019 Supp. 23-2902. This divorce decree was by order of the court without an underlying settlement agreement by

7

the parties. The district court thus has wide discretion to adjust the financial obligations of the parties in initially determining maintenance, within the constraints of the statutes governing spousal maintenance. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996). Steven argues that the district court abused its discretion because its modification of the initial maintenance terms did not conform to those statutes. See K.S.A. 2019 Supp. 23-2901 et seq.

*Maintenance Automatically Terminated as Stated in Divorce Decree*

Steven claims that his maintenance obligation automatically terminated under the divorce decree when Keira cohabited with McGhee. The divorce decree states:

> "The spousal maintenance payments shall terminate upon . . . : [Keira's] 'cohabitation,' defined as living with a non-relative adult for substantially consecutive periods of time in excess of thirty (30) days, even if said relationship does not amount to marriage-like 'cohabitation' under the common law of Kansas."

The district court found, and Keira does not dispute, that these terms were met. Steven relies on the plain language of the decree, stating that the maintenance payments shall terminate upon Keira's cohabitation.

Steven also relies on *Quint*. There, the Kansas Supreme Court held that maintenance payments automatically ceased upon the payee's remarriage. The divorce decree there ordered the husband to pay spousal maintenance for 30 months "'so long as the petitioner [did] not remarry or cohabitate with a member of the opposite sex.'" 258 Kan. at 666. Six months later, the ex-wife remarried. Husband then filed her marriage license with the district court but did not move to modify or terminate spousal maintenance. Instead, he simply stopped paying maintenance.

8

Two and a half years later, the ex-wife obtained a garnishment order to recover unpaid spousal support from her ex-husband. But husband moved to set aside the garnishment, arguing his maintenance had automatically terminated upon wife's remarriage. The district court agreed. 258 Kan. at 667.

Our Supreme Court affirmed that decision, holding that maintenance automatically terminates upon the occurrence of a termination condition set out in the divorce decree, under K.S.A. 1995 Supp. 60-1610(b)(2). That statute shares identical language with K.S.A. 2019 Supp. 23-2901 et seq., although the new statute is reorganized. The court held:

> "Maintenance payments automatically cease upon the payee's remarriage when the judgment awarding maintenance so provides, in the absence of statutory provisions to the contrary and subject to the payee showing the alleged remarriage is void. Thus, we find [husband's] maintenance obligation automatically terminated upon [wife's] remarriage." 258 Kan. at 677.

The court reasoned: "The parties are well aware of the terminating event, and it seems inherently unfair to require the payor to constantly monitor the payee's marital status and for the payee to profit by not revealing the occurrence of a terminating event." 258 Kan. at 673.

The Court relied on the fairness rationale in *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972): "'Certainly [the payee] must have understood that by remarrying she was abandoning her claim for support under the agreement, for better or for worse in favor of whatever support would be furnished by her new spouse. [The payee] remarried and the alimony ceased.'" 258 Kan. at 676 (holding that the payor's maintenance obligation terminated upon the payee's remarriage even though the marriage was voidable).

The *Quint* court also found that although the termination conditions in *Dodd* were defined in a separation agreement while the termination conditions in *In re Marriage of Quint* were ordered in a divorce decree, this distinction was irrelevant. 258 Kan. at 676. Thus, it makes no difference whether the termination conditions were defined in a separation agreement later incorporated into a divorce decree or rather were ordered in a divorce decree without any underlying separation agreement. The plain language of the document is the same, regardless of its source. And the binding effect of a divorce decree without an underlying separation agreement is no less than the effect of a divorce decree with an underlying separation agreement.

Our cases have consistently applied *Quint* where the divorce decree explicitly states that the duty to pay maintenance shall terminate on a specific condition. Thus, in *Knoll*, 52 Kan. App. 2d at 940, where the provision stated that husband's maintenance obligation would terminate once wife began cohabitating with another person, a panel of this court found "[t]he term 'shall' demonstrates that termination is mandatory, not discretionary. Consequently, the trial judge erred when he determined that he had discretion in determining the date when [husband's] maintenance obligation would terminate." The same is true here. The divorce decree's use of the term "shall" creates a mandatory duty for the judge to terminate maintenance. The decree did not use the term "may," which is permissive and would give the judge discretion to terminate maintenance or not.

Similarly, in *Saroff v. Haun*, 28 Kan. App. 2d 471, 473-74, 17 P.3d 943 (2001), a panel of this court reaffirmed that spousal maintenance terminates automatically upon remarriage when so provided for by separation agreement. See *In re Marriage of Seymour*, No. 106,124, 2012 WL 309332, at *5 (Kan. App. 2012) (unpublished opinion) (holding maintenance automatically terminated on wife's remarriage when the divorce decree stated that maintenance shall be terminated by wife's remarriage).

10

Although some cases involve remarriage instead of cohabitation, "the rule should apply equally to both situations: the obligation to pay maintenance terminates automatically the moment one party commits an act that requires the termination of maintenance under the separation agreement." *Knoll*, 52 Kan. App. 2d at 940. Of course, remarriage can be simple to determine and prove. But see *Seymour*, 2012 WL 309332 at *3-5 (disputing proof of a common-law marriage). Whether cohabitation has occurred for the stated time period and within the definition of that term in the divorce decree could be harder to prove than remarriage. But not here. The parties' stipulations, the uncontested evidence, and the district court's findings all agree Keira cohabited, as defined in the decree, and for the time stated in the decree, by late June 2018. Under these facts, given the cohabitation termination clause in the divorce decree, maintenance terminated automatically on that date. Steven was no longer responsible to pay spousal maintenance after June 2018.

*Cases without automatic termination clauses are distinguishable.*

*Quint* distinguished cases in which express termination conditions were not included in a divorce decree—in those cases spousal maintenance did not automatically terminate upon remarriage. 258 Kan. at 671-77. Thus, in *Herzmark v. Herzmark*, 199 Kan. 48, 54, 427 P.2d 465 (1967), when an award of alimony was made payable until further order of the court, remarriage made "a prima facie case which requires the court to end it, in the absence of proof of some extraordinary circumstances justifying its continuance." 199 Kan. at 54. The court held that an award of alimony should not have continued after the wife's valid remarriage, where the wife failed to meet her burden of proving special circumstances of need justifying any continuance of alimony. 199 Kan. at 55.

Similarly, in *Wright v. Wright*, 209 Kan. 628, 629-31, 498 P.2d 80 (1972), when the wife remarried, the court held it was error to refuse to terminate alimony payments

11

originally awarded which had not already become due as of the date husband moved to modify the decree, even though the decree specifically provided that alimony "shall not terminate because of the death or remarriage of the wife." Relying on *Herzmark*, the *Wright* court found that the district court cannot make alimony incapable of modification or termination upon death or remarriage, and that remarriage creates a prima facie case for termination. 209 Kan. at 630-31. The court found "no special circumstances or strong and compelling reasons in the appellee's situation which should place upon the appellant the burden of her continued support." 209 Kan. at 630.

*Quint* also distinguished *Beck v. Beck*, 208 Kan. 148, 490 P.2d 628 (1971) and *In re Marriage of Cray*, 18 Kan. App. 2d 15, 30, 846 P.2d 944 (1993), *rev'd in part*, 254 Kan. 376 (1994), in the same way, as neither divorce decree included remarriage as an express termination condition. 258 Kan. at 674-75.

Yet the divorce decree here did contain specific termination conditions. The district court determined when drafting the divorce decree that cohabitation was an appropriate event warranting termination of maintenance. The termination conditions were clearly stated in the decree and were thus well known to Keira. Keira met that condition of termination in the divorce decree when she cohabited with McGhee. Although Keira could have disputed the fact of cohabitation, see *Quint*, (permitting the payee to show the alleged remarriage is void), Keira instead stipulated that she lived with McGhee from June 2018 through February 2019. And the district court found that she violated this termination condition of the divorce decree by cohabitating with McGhee for over 30 days. Under *Quint*, Steven's maintenance obligation automatically terminated when Keira violated this condition.

12

*The district court's previous suspension of Steven's duty is immaterial.*

Keira argues that, because the district court had suspended or vacated Steven's maintenance order for other reasons during her cohabitation with McGhee, "there could have been no acts [on her part] which would have caused the obligation to terminate." Yet she cites no authority to support her position. Failure to support a point with pertinent authority or to show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). This issue was not adequately briefed so was waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

And Keira's position has little logical appeal. We see no reason why a court's suspension of one party's duty to pay maintenance would relieve a different party from a separate duty under the decree (the duty not to cohabite or to suffer the automatic result of cohabitating). Nor would the district court's temporary suspension of Steven's duty to pay maintenance create some new right in Keira to ignore the plain terms of the divorce decree.

*The district court lacks power to modify after a terminating event.*

After finding Keira in violation of the divorce decree's termination conditions, the district court "modif[ied] the terms of spousal maintenance" and found Steven did not have to pay maintenance payments for the nine months that Keira cohabited with McGhee. The district court stated that it had "jurisdiction to modify its Decree of Divorce as it relates to the payment of spousal maintenance so long as the obligation of the Petitioner is not increased." Steven contends this was an abuse of discretion. We agree.

13

K.S.A. 2019 Supp. 23-2903 provides that a district court may reduce a maintenance award or lessen the conditions of payment in a divorce decree without consent of the burdened party on certain conditions:

> "At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree."

The district court relied on this statute in modifying maintenance. But the divorce decree did not empower the district court to modify maintenance payments sua sponte as the district court did here. Rather, the decree contemplated a motion to modify—"For the [Court] to hear a motion to modify, there must exist a departure of at least ten percent (10%)."

Nor do the relevant statutes give the court the power to modify maintenance sua sponte. Instead, the maintenance statutes contemplate that a party will file a motion to modify with the court. See K.S.A. 2019 Supp. 23-2904 (stating, "[t]he court may make a modification of maintenance retroactive to a date at least one month after the date that the motion to modify was filed with the court").

And we cannot reasonably construe Steven's motion to terminate maintenance as a motion to modify maintenance. That motion asked the court to enforce the terms of the original divorce decree, which said the spousal maintenance payments "shall terminate" upon Keira's cohabitation. Steven moved the court to *enforce* the original terms of the divorce decree, not to *change* them. See *Seymour*, 2012 WL 309332, at *5.

14

But even if a court can sometimes modify sua sponte, the court's modification of maintenance here was still prohibited by K.S.A. 2019 Supp. 23-2903. This is because the modification was done without Steven's consent, as shown by his appeal of the court's modification of maintenance, and the court's modification did not reduce Steven's payments; instead, the modification had "the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree." The original decree prescribed that Steven would have *no liability* for any unpaid maintenance after Keira's cohabitation, but the district court found that Steven had to pay maintenance after Keira's cohabitation ended. The district court thus altered the terms of the original decree, increasing Steven's liability for maintenance beyond the date maintenance terminated according to the original terms of the decree. Cf. *Quint*, 258 Kan. at 670. The district court lacked the power to modify the original decree in that way under K.S.A. 2019 Supp. 23-2903 ("[N]o modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree.").

And, as noted above, our caselaw establishes that the district court cannot modify maintenance once a terminating event has occurred. *Knoll*, 52 Kan. App. 2d at 940 (finding the trial judge erred by determining that he had discretion to terminate husband's maintenance obligation on a date other than the date in the divorce decree). See *Beck*, 208 Kan. at 148-50 (finding court's order of modification should have been an outright termination of alimony when wife remarried).

*Equitable argument fails*

Keira also makes an equitable argument, stating the result was fair and equitable considering the circumstances. She argues that the court's orders in essence forced her into a position where she had no choice but to reside with a third party, so it would be inequitable for the court to then terminate maintenance.

15

We are unpersuaded by this equitable argument for five reasons. First, because the termination of maintenance was automatic, ending Steven's legal duty to pay maintenance neither required a motion by Steven nor provided an opportunity for Kiera to argue a defense of special circumstances or inequities. Compare *Quint*, 258 Kan. at 671-677 (rejecting the argument that the payee may have a defense to the remarriage which should be heard before the maintenance is terminated when the decree specifically states remarriage is a termination condition) with *Herzmark*, 199 Kan. 48 at 51-54 (finding a payee's remarriage does not necessarily terminate maintenance if special circumstances justify continuation of the maintenance, where decree ordered the payor to pay maintenance "until the further order of the court" and did not include remarriage as a termination condition in the decree). Although *Herzmark* and *Wright* permit a payee to show "special circumstances," that exception does not apply here. Those circumstances are presented by way of defense to refute a prima facie case of remarriage where a decree orders payment until further order of the court or the decree does not include specific termination conditions. But the decree here does not order payment of maintenance until further court order. Instead, it states maintenance shall terminate upon wife's cohabitation. Because maintenance terminates automatically, no defense of special circumstances is permitted.

Second, even if a defense were permitted, the special circumstances contemplated in *Herzmark* and *Wright* are only "special circumstances of need." *Herzmark*, 199 Kan. at 53-54. *Herzmark* found "proof of a valid remarriage does make a prima facie case which requires the court to end [alimony], in the absence of proof of some extraordinary circumstance justifying its continuance." 199 Kan. at 54. Similarly, *Wright*, 209 Kan. at 630, found "no special circumstances or strong and compelling reasons in the appellee's situation which should place upon the appellant the burden of her continued support." Keira makes no attempt to show she had extraordinary need justifying continuance of the maintenance payments. Instead, the record refutes such a need. By the date the court ordered Steven's modified maintenance to begin, Keira had a job, her own income, an

16

apartment, a car, and a boyfriend who had demonstrated his willingness to help as needed.

Third, the record does not support Kiera's factual contention that the court forced her into cohabitation. Keira was responsible to make her own choices and to bear the consequences of her decisions. The district court suspended maintenance—Keira's only source of income for a time—only because she chose to defy a court order. And it reduced her proceeds from the sale of the family home because of fines resulting from her contempt of court. Keira knew that maintenance would end if she cohabited with McGhee. See *Quint*, 258 Kan. at 673; *Dodd*, 210 Kan. at 55 (holding spouse responsible for violating known conditions in the divorce decree's termination clause). No inequity arises from enforcing the unambiguous termination clause in the divorce decree.

Fourth, a district court must follow the law, even if doing so may create what one party may consider to be an inequitable circumstance. The relevant law provides that "[a divorce decree] may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances." K.S.A. 2019 Supp. 23-2902(a). This statute shows that a district court's opportunity to do equity is not when asked to enforce a decree's automatic termination clause—it is when the district court first determines the amount of maintenance, if any, to award in a divorce decree. The district court here had already found the divorce decree and its cohabitation termination provision to be valid, just, and equitable. The court must exercise its powers within the limits of the jurisdiction conferred by statute, and this statute limits the exercise of equity powers to the initial determination of maintenance.

Once a divorce decree is filed, the court's ability to "do equity" is curtailed by the express provisions of the divorce decree. Obviously, the district court may exercise its equitable powers to enforce provisions of the decree or to craft a remedy under circumstances not provided for in the decree. But Keira shows no authority for the

17

proposition that the district court may exercise its equitable powers to contradict express provisions of the decree, as the court did here. The district court abuses its discretion by trying to do, under its equitable powers, something contrary to the very terms of the decree it drafted. So the district court could not equitably refuse to terminate Steven's maintenance after finding the termination condition in the divorce decree had occurred.

Fifth, although the district court could have stated in the divorce decree that cohabitation would modify, instead of terminate, future maintenance payments, it did not do so. See K.S.A. 2019 Supp. 23-2902(c) (providing that a divorce decree "may make the future payments modifiable or terminable under circumstances prescribed in the decree"). Instead, the divorce decree stated solely that "spousal maintenance payments shall terminate" upon cohabitation.

CONCLUSION

The district court abused its discretion, by error of law, because it lacked the authority to modify spousal maintenance. The district court should have enforced the original divorce decree and terminated Steven's duty to pay spousal maintenance after June 2018. We remand with directions for the district court to do so.

Reversed and remanded with directions.

\* \* \*

ATCHESON, J., dissenting: This case has become one about the statutory authority and judicial discretion of district courts to manage and modify spousal maintenance orders as part of a calibrated division of a divorcing couple's financial obligations and resources. The majority throttles that authority and discretion into near legal lifelessness when it comes to modifying maintenance orders by erroneously reading the governing

18

statutes in a way that squeezes fairness and equity out of those judicial decisions. In this case, the district court acted within what should be recognized as its proper statutory discretion to modify rather than terminate the maintenance payments. I, therefore, respectfully dissent and would affirm the district court's ruling.

Here, the district court twice modified its original order on spousal maintenance, consistent with K.S.A. 2019 Supp. 23-2903, first to adjust the conditions of payment and later the total amount to be paid. Those rulings benefited the former husband as the party obligated to pay maintenance. The district court later exercised that same statutory authority to deny the former husband's motion to terminate the maintenance and instead reduced the number of payments due—the decision prompting this appeal. All of those rulings fell within a district court's properly defined statutory authority and discretion and should be reviewed for abuse of that broad latitude. I see no such judicial overreach and would affirm the district court's decision to limit rather than terminate the maintenance it had ordered.

The majority reverses the district court ostensibly for having stepped outside the appropriate legal framework. But the majority has recrafted that framework by clipping the authority of district courts to adjust maintenance obligations to account for evolving circumstances after a divorce decree has been entered. In this case, the new legal rule relieves the former husband of his obligation to pay maintenance and, thus, imposes a reciprocal detriment on the former wife. To reach that result, the majority effected a systemic change that grossly curtails district courts' flexibility to adjust spousal maintenance in future cases.

*Underlying Facts and Governing Statutes*

Some salient facts and related legal rules should be set out to place the dispute and the consequences of its resolution in a proper context:

19

• In the decree granting a divorce to Steven P. Welter and Keira J. Welter, the Miami County District Court ordered Steven to pay $781 a month in maintenance to Keira for 73 months. The district court fashioned the amount and duration of the maintenance as one component of a financial accounting of their relationship, including their earning capacities, to make an equitable allocation of the marital assets and liabilities. See K.S.A. 2019 Supp. 23-2711(a)(2) (in divorce decree, district court may order "an equitable division of the parties' property"); K.S.A. 2019 Supp. 23-2802(a) (district court may order one party "to pay a just and proper sum" in rendering a fair division of property); *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 246, 452 P.3d 392 (2019) ("district court has broad authority in a divorce action to divide the parties' assets and debts equitably").

The maintenance award was *not* a product of a separation agreement between Steven and Keira that the district court then incorporated into the divorce decree. Contrary to the majority's suggestion, that does make a difference. An incorporated separation agreement is both an order of the district court and a contract between the parties. Once the district court has reviewed a separation agreement and found it to be fair, the terms of the agreement incorporated into the divorce decree generally cannot be modified except by mutual agreement of the parties, consistent with its contractual character. K.S.A. 2019 Supp. 23-2712 (no modification of court-approved agreement except as provided in agreement itself or as the parties later agree).

• The decree provides that spousal maintenance terminates upon the death of either Steven or Keira or Keira's remarriage or her "'cohabitation,' defined as living with a non-relative adult for substantially consecutive periods of time in excess of thirty (30) days, even if said relationship does not amount to marriage-like 'cohabitation' under the common law of Kansas." The decree also provides that maintenance may be modified consistent with K.S.A. 2019 Supp. 23-2901 through K.S.A. 2019 Supp. 23-2904. But payments "may not be modified or reviewed more than one (1) occasion every two (2)

20

years" and for "a motion to modify, there must exist a departure of at least ten percent (10%)."

Under K.S.A. 2019 Supp. 23-2903, a district court can "[a]t any time" with reasonable notice "modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due." But the district court cannot "increas[e] or accelerat[e]" the payment of maintenance without the consent of the party obligated to pay. K.S.A. 2019 Supp. 23-2903. Here, the district court clearly retained the liberal authority to modify spousal maintenance established in K.S.A. 2019 Supp. 23-2903 by explicitly incorporating into the decree the statutes applicable to maintenance. The remaining language in the decree limiting modification regulates motions of the parties rather than independent actions of the district court.[*]

[*] I presume a district court would retain the authority over spousal maintenance vested in K.S.A. 2019 Supp. 23-2901 through K.S.A. 2019 Supp. 23-2904 without specifically reserving that authority in the decree. Conversely, a district court probably could expressly curtail or relinquish that authority. And as I have mentioned, a district court is statutorily precluded from modifying maintenance set out in a separation agreement of the parties then incorporated into the divorce decree. K.S.A. 2019 Supp. 23-2712(b). Here, the district court's explicit recitation of its statutory authority marks a clear counterpoint to the limitations on motions from the parties.

• For purposes of this appeal, Keira's residency with Todd McGhee, who is described in the record as her boyfriend, met the definition of cohabitation in the decree. The definition, however, is arguably ambiguous or could lead to unintended consequences in other factual circumstances, underscoring the desirability of judicial discretion and flexibility. The verb "cohabit" can mean either "to live together as husband and wife . . . when not legally married" or "to live or exist together; share the same place." Webster's New World College Dictionary 290 (5th ed.) (defining "cohabit"). The former connotes an intimate relationship; the latter does not. The decree, by including relationships that are not "marriage-like," quite arguably would cover Keira being a boarder in someone else's home or even a long-term guest.

21

• In allocating assets and liabilities in this case, the district court ordered the marital residence sold and directed how the proceeds should be divided. That's not at issue here. But the record demonstrates Keira deliberately confounded the process in ways that caused one potential sale to fall through and reduced the net amount realized from a later sale. And significantly here, the district court excused Steven from paying spousal maintenance to Keira beginning in February 2018 as a means of coercing Keira to cooperate in selling the house. After the sale, the district court terminated the maintenance payments due from November 2018 through March 2019 to even out the overall financial distribution. Those orders plainly modified to Steven's benefit the amount and conditions for payment of spousal maintenance set out in the decree.

• When the district court entered its orders, Keira was not otherwise employed and depended on the maintenance payments. After the district court suspended the payments, Keira was evicted from her apartment and lived briefly with her mother. She moved in with McGhee in June 2018. Steven filed a motion in December 2018 to terminate the maintenance because Keira was cohabitating with McGhee. The district court held a hearing on the motion in May 2019. By the time of the hearing, Keira had gotten a job and had moved out of McGhee's house. For purposes of the hearing, the parties stipulated that Keira had resided with McGhee from June 2018 until February 2019. And they agreed the arrangement constituted cohabitation as defined in the decree.

After hearing evidence on Steven's motion, the district court again modified the original maintenance order by shortening the payment period by nine months. The reduction corresponded to the time Keira lived in McGhee's home and reflected the district court's deliberate and studied determination of how to fairly assess spousal maintenance going forward as part of the overall financial reconciliation between Steven and Keira necessitated by their divorce. Steven appealed the district court's ruling, and the majority has reversed it. I now turn to the legal analysis of these circumstances.

22

*District Court Properly Exercised its Statutory Authority*

The decision of a district court to modify spousal maintenance entails an exercise of judicial discretion and should be reviewed on appeal for an abuse of that broad authority. *In re Marriage of Hair*, 40 Kan. App. 2d 475, Syl. ¶ 2, 193 P.3d 504 (2008) ("The district court has wide discretion regarding spousal maintenance, and an appellate court will only disturb a judgment regarding maintenance if there was a clear abuse of discretion."); *In re Marriage of Santee*, No. 117,222, 2018 WL 475477, at *10 (Kan. App. 2018) (unpublished opinion). A district court can overstep in three ways: (1) coming to a conclusion no reasonable judicial officer would under the circumstances; (2) ignoring controlling facts or relying on unproven factual representations; or (3) acting outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

On appeal, nobody has suggested the district court failed to grasp the relevant facts, and the majority does not premise its decision on some factual misunderstanding by the district court. I agree. An abuse of discretion cannot rest on that ground. The district court's serial modifications of the maintenance payments over the course of the case conform to the authority granted in K.S.A. 2019 Supp. 23-2903 and, therefore, fit within the governing legal framework. In sum, the district court here retained the discretionary authority granted in K.S.A. 2019 Supp. 23-2903 to modify the payments and conditions governing spousal maintenance. As I explain in laying out the majority's misreading of *In re Marriage of Quint*, 258 Kan. 666, 907 P.2d 818 (1995), that authority extended to the termination-on-cohabitation clause the district court included in the decree.

With those givens, I cannot say the district court's decision to shorten the maintenance period rather than to terminate the maintenance in response to Steven's motion was unreasonable. Nothing in the record suggests the parties' relative financial

23

circumstances had so dramatically shifted between the entry of the decree and the hearing on the motion to warrant the outright termination of maintenance for that reason. Steven makes no alternative argument for reversing the district court on that basis.

When the district court heard Steven's motion, it considered all of the circumstances, including its earlier decisions cutting off maintenance to Keira, the repercussions of those decisions, and the comparative financial circumstances of Steven and Keira. Taking account of those facts, the district court concluded that terminating the remainder of the maintenance would be inequitable and, instead, reduced the duration of Steven's continuing obligation by a period corresponding to the time Keira resided with McGhee. The district court had the legal authority to revise its own maintenance order in the decree to preserve the overall financial equities it sought to implement at that time. So I see no abuse of discretion and would affirm the district court, especially under that standard of review.

The majority, however, constructs an errant legal framework and declares the district court to have deviated from the governing rules it has created. As I explain, the majority's approach both conflicts with the statutes applicable to maintenance and misreads caselaw, most notably *Marriage of Quint*. The result is a marked and unjustifiable restriction on district court authority when it comes to regulating spousal maintenance. Because the majority devises its own legal rules for adjusting maintenance awards and relies on them to reverse, it never really considers whether the district court's decision to shorten the period Steven had to pay maintenance was so off the mark as to be intrinsically unreasonable.

*Majority's Rationale Considered*

### A. *Misconstruing and Misapplying* In re Marriage of Quint

The majority relies heavily on *Marriage of Quint*, as has Steven. In that case, the Kansas Supreme Court held that a provision in a divorce decree terminating spousal maintenance for remarriage is self-effectuating upon the marriage and requires no judicial order. 258 Kan. at 677. So the obligated party can simply stop paying. Handing parties largely unregulated authority to abandon court orders upon a condition subsequent seems like a fraught proposition, but that is not for me to say when it comes to remarriage clauses in divorce decrees. Correlatively, *Marriage of Quint* establishes that a district court cannot modify or mitigate a clause terminating support upon remarriage. The majority cites other Kansas cases decided after *Marriage of Quint* that have applied those principles when the recipient of maintenance has remarried.

But *Marriage of Quint* is materially distinguishable here in two respects. First, of course, it deals with remarriage rather than cohabitation, and both the reasoning and the holding of the decision are confined to remarriage. There are substantive differences that weigh against extending the rule of *Marriage of Quint* to cohabitation. As the decision points out, someone who has gotten married typically creates a discernible document trail leading up to and confirming the event. Except in comparatively rare instances where legal capacity might be in dispute, the fact of remarriage will be clear cut and easily determined. (And the court recognized a limited exception permitting a hearing if there were a colorable claim of incapacity or some other circumstance rendering the remarriage void.) Proof of cohabitation, however, commonly won't be nearly as tidy, especially if, as here, the definition in the decree is itself untidy.

Furthermore, civil marriage carries with it recognized legal duties, generally including spousal support at least for necessities. See *Williams v. GEICO General Ins.*

25

*Co.*, 311 Kan. 78, 83-84, 456 P.3d 222 (2020). Remarriage, then, reasonably replaces a former spouse's obligation to pay maintenance with the duty of the new spouse to financially secure the household. The same is not true of cohabitation in this state. A district court has the statutory authority under K.S.A. 2019 Supp. 23-2903 to enforce a termination-upon-cohabitation clause upon notice and hearing. Potential remedies would include orders or judgments for repayment of maintenance wrongfully received after the impermissible cohabitation had begun. That's sufficient in dealing with potentially hazy circumstances bound up in what the party obligated to pay support alleges to be the recipient's cohabitation.

Self-help and legal untidiness are ingredients in a recipe not only for messy litigation but for the abusive or vindictive withholding of maintenance payments based on the recipient's purported cohabitation. A district court awards spousal maintenance as part of a fair and equitable allocation of financial obligations and resources between partners in a marriage when they decided to end their partnership. By design, then, maintenance functions as an integral part of the recipient's economic stability. A decision of the obligated party to unilaterally cut off those payments would commonly inflict some substantial degree of financial harm. The risk of an unwarranted self-help termination of maintenance—whether through misperception or spite—would be much greater with a claim of cohabitation than remarriage. And an obligated party's claim of good-faith error would be more difficult to disprove in a case of cohabitation than remarriage. In turn, the incentive to act with comparative impunity from later court sanctions would be greater.

In short, the near absolute rule laid down in *Marriage of Quint* on the effect of remarriage doesn't translate well to cohabitation. The *Quint* decision rather conspicuously does not invite or encourage that translation, even though the clause in the decree conditioned termination on remarriage or cohabitation. The majority has no obligation to extend *Marriage of Quint* to this case, and the decision to do so represents a bad idea and poor policy.

26

Both the majority and Steven suggest we did apply *Marriage of Quint* to cohabitation clauses in divorce decrees in *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 381 P.3d 490 (2016), but that isn't really correct. The court in *Knoll* recognized that it should enforce without modification a clause terminating maintenance upon cohabitation specifically because the parties had included it in their negotiated settlement agreement then incorporated into the decree. 53 Kan. App. 2d at 939-40; see also K.S.A. 2019 Supp. 23-2712 (precluding modification of settlement agreements incorporated into decrees, except as to child custody and support). The dispute in *Knoll* centered on what the parties meant by the undefined term "cohabitation" and whether the ex-wife had cohabitated within the meaning of their settlement agreement. Here, Steven and Keira had no settlement agreement, so the district court was not similarly constrained in modifying the divorce decree's treatment of maintenance under K.S.A. 2019 Supp. 23-2903.

The second and perhaps more significant difference between this case and *Marriage of Quint* is the district court's intervention substantially reducing the maintenance due Keira both before she moved in with McGhee and while she resided in his house. Those rulings helped to precipitate and prolong Keira's living arrangements, setting this case apart from *Marriage of Quint* and the remarriage there.

The parties have not questioned the district court's authority to have modified the maintenance payments twice before Steven filed his motion to terminate them. Nor do I. The district court initially suspended the payments as a means of pressuring Keira to sign documents and otherwise take the steps necessary to complete the sale of the marital residence in conformity with the divorce decree. In doing so, the district court reasonably concluded the loss of maintenance would inflict an economic injury on Keira of sufficient gravity to prompt her compliance with the decree. The ruling operated as a sanction in civil contempt to compel adherence to the district court's orders. And it fit within the statutory authority afforded the district court to modify maintenance in K.S.A. 2019 Supp. 23-2903.

27

After the sale of the marital residence, the district court again suspended Steven's obligation to pay maintenance as an equitable setoff against the diminution in net proceeds from the transaction directly attributable to Keira's wrongful conduct. See *In re Estate of Heiman*, 44 Kan. App. 2d 764, 772, 241 P.3d 161 (2010) (recognizing setoff as equitable remedy). The district court's modification of the maintenance amount and conditions for that purpose also came within its authority under K.S.A. 2019 Supp. 23-2903. That seems particularly true when the setoff aimed to restore the fair disposition of the house as a marital asset.

Those rulings directly and adversely affected Keira's financial situation, and they played some part in her living arrangements. After the district court first suspended the maintenance payments, Keira was evicted from her apartment for nonpayment. She lived briefly with her mother and then resided with McGhee. Those choices were, of course, volitional broadly speaking. Keira had other options—she could have stayed in a shelter or a flophouse. More realistically, she might have aggressively sought gainful employment sooner. And Keira invites no sympathy, since her own contumacious behavior set in motion the entire sequence of events. None of that was lost on the district court.

The circumstances stand apart from those in *Marriage of Quint*; there were no district court rulings in that case adversely affecting either the spousal maintenance originally ordered or other terms of the decree. In that sense, the decision to remarry was pristine and unaffected by any district court orders or actions. The *Quint* court did not speculate that its analysis or ultimate determination would have been influenced, let alone changed, if the district court had temporarily cut off maintenance payments before the remarriage. One might infer not, but that would be more of a guess than a reasoned inference, since the bulk of the opinion consists of a point and counterpoint narration of the parties' arguments with little in the way of an enunciated rationale for the result. And

28

to reiterate, the court assiduously avoided even mentioning cohabitation, further removing that case from this one.

*Majority's Five Reasons for its Ruling Fall Short*

In addition to extending *Marriage of Quint*, the majority crafts a quintet of reasons it says supports reversing the district court. Those reasons effectively eliminate the statutory discretion in K.S.A. 2019 Supp. 23-2903 to regulate maintenance. And they suggest district courts cannot modify maintenance to preserve fairness and equity in the parties' overall financial reconciliation. Basically, the majority holds this district court and all district courts in similar situations have no equitable or discretionary authority to act. The negation of that authority is surprising, sweeping, and quite troubling. I take up the arguments as the majority presents them:

• The majority says termination of Steven's obligation to pay maintenance was automatic and again cites *Marriage of Quint*. This is not really an additional reason and simply summarizes the majority's principal reliance on that case. It remains mistaken precisely because *Marriage of Quint* and the other cases involving remarriage are inapposite and because the district court here otherwise retained the discretion under K.S.A. 2019 Supp. 23-2903 to modify the terms and conditions governing the maintenance it had ordered in the decree.

• The majority says Keira showed no "special circumstances" warranting relief. It points out that by the time the district court heard Steven's motion, Keira had a job and had moved out of McGhee's house. Those are two different considerations, neither of which is persuasive.

Kansas appellate cases more or less presume maintenance should terminate if the recipient remarries even though the decree generically permits termination only upon

29

further order of the district court. Those cases suggest a district court might find special circumstances in some rare situation to continue maintenance after remarriage.

Without resorting to a special circumstances exception, I would find the district court's withholding of maintenance payments first as a contempt sanction against Keira and then as a setoff mechanism in favor of Steven to be a sufficient basis for the district court to then modify the termination-on-cohabitation clause. The district court made the last modification, in part, to account for the effects of its own actions in withholding maintenance earlier.

As to Keira's financial condition at the time of the hearing, the district court factored that into its decision to continue Steven's obligation to pay maintenance while reducing the total amount. The decision reflects precisely the sort of discretion a district court is supposed to exercise in setting or later reevaluating an award of maintenance. As I have said, nobody has argued the comparative economic positions of Steven and Keira at the time of the hearing rendered *some* continuation of maintenance an abuse of discretion.

• The majority says the district court did not "force" Keira into cohabitating with McGhee. That's certainly true in a literal sense. As I have discussed, the district court's orders halting the maintenance for an extended time were a precipitating factor, among others, leading to Keira's cohabitation. Keira had other choices, some of which would have been distinctly inconvenient and uncomfortable. As we all agree and have repeatedly recounted, Keira's own bad behavior kicked off the sequence of events that led to her cohabitation and Steven's motion to terminate spousal maintenance. But those circumstances did not negate the district court's statutory discretion under K.S.A. 2019 Supp. 23-2903 to modify the maintenance it had ordered in the decree. They bear on the district court's exercise of its discretion—not the existence of the discretion.

30

The argument really sounds a lot more like my colleagues suggesting they would have granted Steven's motion to terminate. And if they were district court judges that might not have been an abuse of discretion. But we don't substitute what we would have done for what the district court actually did in applying an abuse of discretion standard. See *State v. Grado*, No. 119,288, 2020 WL 1223713, at *2 (Kan. App. 2020) (unpublished opinion) *petition for rev. filed* April 16, 2020; *State v. Smith*, No. 112,530, 2015 WL 4580440, at *10 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., concurring in part and dissenting in part) ("Disagreement with the district court—even strong disagreement—doesn't translate to an abuse of discretion."). On the facts and the law, this may be one of those cases in which the district court would not have abused its discretion with a ruling either way. See *Arbor Lake, LLC v. Enterprise Bank & Trust*, No. 109,757, 2014 WL 4723732, at *4 (Kan. App. 2014) (unpublished opinion); *Brick Masters, Inc. v. Murray & Sons Construction Co, Inc.*, No. 107,426, 2013 WL 1729249, at *3 (Kan. App. 2013) (unpublished opinion).

• The majority's final two points both turn on K.S.A. 2019 Supp. 23-2902, governing inclusion of spousal maintenance in the divorce decree. Under K.S.A. 2019 Supp. 23-2902(a), the district court may include maintenance in the decree "in an amount the court finds to be fair, just[,] and equitable under all of the circumstances." And under K.S.A. 2019 Supp. 23-2902(c), the district court "may . . . prescribe[] in the decree" circumstances permitting modification or termination of the payments. The majority reads those provisions in tandem to mean a district court can modify or terminate maintenance based *only* on conditions identified in the decree and cannot otherwise modify or terminate maintenance even if doing so would be fair and equitable. The majority fashions a wooden rule that inexplicably hobbles district courts in considering changes in maintenance to accommodate fluid and often unforeseen events that are the stuff of human endeavors. The rule strips away the broad discretion extended district courts in K.S.A. 2019 Supp. 23-2903 to modify or terminate maintenance and squeezes any consideration of fairness and equity from the exercise of that discretion. Those are

31

decisions that ought to be grounded in the same fair, just, and equitable objectives that animated the original maintenance order.

Apart from not being especially sensible, the majority's position fails to fit well with canons of construction that guide our review of statutes. As a first principle, we are to discern and then carry out the legislative intent behind a statute. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). We obviously turn to the statutory language as the preeminent source of legislative design. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725-26, 317 P.3d 70 (2014). But we should also consider a particular statutory provision alongside related statutes to see that they function reasonably together. If they don't, that's a strong signal something may be amiss in how we are construing them. *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statutes "to avoid unreasonable or absurd results").

So the requirement for fair and equitable consideration in setting spousal maintenance in the first instance under K.S.A. 2019 Supp. 23-2902(a) would also be applicable to any later modification or termination under K.S.A. 2019 Supp. 23-2903. The canon of in pari materia construction of statutes requires nothing less. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015) (in pari materia rule calls for related statutes to be construed harmoniously to effectuate legislative intent). The two statutes obviously are supposed to work together to cover the treatment of maintenance over the course of a divorce and the duration of the payments—a period that could be as long as 120 months. Until a recodification of domestic relations statutes in 2011, they both appeared in the same subsection of K.S.A. 60-1610 governing maintenance. See K.S.A. 60-1610(b)(2) (Furse). Their language and purpose were unchanged in the recodification. A reading of those statutes to direct that a district court ought to be guided by fairness, justice, and equity at the first but not later challenges both reason and good public policy. If at all possible, we ought to assume the Legislature acts with both in mind in designing statutory schemes or recodifying existing schemes.

32

The majority compounds the error with a coordinate interpretation of K.S.A. 2019 Supp. 23-2902(c) that turns the subsection's permissive language into a mandatory restriction on when a district court can modify or terminate maintenance. The subsection says a district court "may" include express grounds in the decree for modification or termination. The language, then, allows a district court to do so. But it need not. Here, for example, the district court included negative conditions, limiting the parties to motions to modify at no more than two-year intervals based on a defined change in financial circumstances. Those kinds of restrictions keep a party from continually filing for modification based on nominal changes—a situation that quickly would become abusive of the district court's time and the other party's resources.

But the phrasing in K.S.A. 2019 Supp. 23-2902(c) does not limit a district court to later modifying or terminating maintenance only for conditions listed in the decree. The district court can also exercise discretionary authority under K.S.A. 2019 Supp. 23-2903 to modify or terminate for other reason. This court so held in *In re Marriage of Ehinger*, 34 Kan. App. 2d 583, Syl. ¶ 8, 121 P.3d 467 (2005) (Under identical language in K.S.A. 60-1610[b][2] (Furse), "[a] district court retains the power to modify court-ordered maintenance at any time despite such right not specifically being mentioned in its ruling establishing such maintenance."). Again, that's a reasonable in pari materia reading of two integrated statutes the Legislature intended to operate in a coordinated fashion. The majority, however, junks those considerations in favor of making the inclusion of conditions under K.S.A. 2019 Supp. 23-2902(c) mandatory and exclusive rather than permissive. That reading, however, renders K.S.A. 2019 Supp. 23-2903 superfluous, since all changes to maintenance would have to be set out in the decree. *Siruta v. Siruta*, 301 Kan. 757, 763, 348 P.3d 549 (2015) (statute should not be interpreted so part of it becomes surplusage). And if a decree included no conditions, then the maintenance could never be changed. The Legislature didn't intend to make maintenance such an inflexible financial obligation. The language in K.S.A. 2019 Supp. 23-2903 contemplates modification or even termination for reasons other than what may be set out in the decree,

33

so long as the burden on the obligated party is not increased or accelerated without his or her consent and the district court provides notice of and an opportunity to be heard on any change.

Similarly, the majority's construction renders K.S.A. 2019 Supp. 23-2712(b) a statutory dead letter. As I've mentioned, under that statute, a district court can modify spousal maintenance contained in the parties' separation agreement and then incorporated into the decree only in the manner set forth in the agreement. The agreement becomes part of the decree and dictates the conditions for modification or termination. The majority reads K.S.A. 2019 Supp. 23-2902(c) to limit the district court to the terms of modification set out in the decree whether or not they have originated in an incorporated settlement agreement. So K.S.A. 2019 Supp. 23-2712(b) accomplishes nothing that the majority's construction of K.S.A. 2019 Supp. 23-2902(c) would not already do.

That the majority's reading of the statutes regulating maintenance effectively renders a pair of them vestigial calls the reliability of the endeavor into question.

Finally, if the majority's interpretation of those statutes were correct (and it isn't), the opinion fails to faithfully apply that construct here in reversing the district court. The majority simply ignores the first and second modifications the district court ordered to suspend the maintenance payments as a contempt sanction and as an equitable setoff. Neither would have been legally appropriate under the majority's newly fashioned limits on judicial discretion and equitable considerations in modifying maintenance payments. The decree did not expressly grant the district court the authority it exercised. And the majority's pronouncement draining K.S.A. 2019 Supp. 23-2903 of virtually all practical utility would preclude those rulings.

Under the majority's take, those orders suspending Steven's obligation for limited periods had no legal foundation and, therefore, should be considered wrongfully issued.

34

Although those suspensions of maintenance did not compel Keira to cohabitate, the evidence shows that but for the resulting financial losses, she most probably would not have moved in with McGhee. Since the majority's rule should negate those orders, the proper remedy under that rule would restore the parties to the relative positions they held before those orders were entered and, thus, would give no legal effect to the direct consequences of those orders. See *Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007) ("vacatur . . . returns the parties to their original positions, before the now-vacated order was issued"); *Kelch v. Watson*, 237 Ill. App. 3d 875, 878, 604 N.E.2d 971 (1992) (vacating improperly entered order rendered order "nugatory" and "returned the parties to the status they held prior to [its] entry"); *Deines v. Essex Corp.*, 293 Neb. 577, 582, 879 N.W.2d 30 (2016) (vacating order of dismissal for failure to prosecute "put the parties back in the same posture as before the action was dismissed").

Fully applied to this case, the majority's rule would have required the district court to review Steven's motion to terminate maintenance based on the positions he and Keira would have occupied had it never modified the original order. From that perspective, the most reasonable scenario would not include Keira cohabitating with McGhee. So the motion ought to have been denied even under the majority's new legal framework.

The majority briefly stakes out a fallback position, regardless of the statutory language: The decree states that maintenance "shall terminate" upon cohabitation, so that mandatory language must control. But, of course, the district court has the statutory authority to revise its own order governing maintenance. *Marriage of Ehinger*, 34 Kan. App. 2d at 587. Especially with an order that is neither fixed nor truly final, the issuing court typically retains the inherent prerogative to modify its terms to accommodate changed circumstances. See *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (recognizing longstanding "inherent power to modify court orders in changed circumstances"); *David C. v. Leavitt*, 242 F.3d 1206, 1210-11 (10th Cir. 2001). Here,

35

Steven had no legally vested right in the original terms of the maintenance order that would preclude the district court from revising them.

*Conclusion*

The district court acted within the judicial discretion statutorily granted it in modifying and terminating spousal maintenance. I see no abuse of that discretion under the circumstances—an array of district courts might have come to differing, though reasonable, dispositions of Steven's motion. Here, the district court provided Steven less relief than he requested by reducing rather than terminating the maintenance. Given the wide latitude of judicial discretion properly afforded district courts, I would affirm the district court, recognizing that authority not only in this case but for future cases.